**SOUTHWESTERN UNDERGROUND SUPPLY & ENVIRONMENTAL SERVICES, INC., Appellant,**

v.

**AMERIVAC, INC., Appellee.**

No. B14–93–00515–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 17, 1994.

Rehearing Overruled Dec. 15, 1994.

David A. Miller, Jennifer L. Owen, Jason E. Winford, Dallas, for appellant.

John M. Mings, Houston, for appellee.

Before SEARS, ROBERTSON and LEE, JJ.

## OPINION ON MOTIONS FOR REHEARING

ROBERTSON, Justice.

Both parties have filed motions for rehearing. Appellant contends we erred in holding it had not preserved error on its claim that the trial court erroneously permitted appellee recovery in *quantum meruit*. Although we remain skeptical as to whether appellant's claim of error was properly preserved, we will, nevertheless, address the point on its merits.

Appellee claims in its motion for rehearing that we erred in not entering judgment against the surety on the supersedeas bond. In overruling appellee's motion, we point out that the record on appeal does not contain a supersedeas bond, nor is there any indication that such a bond was entered into. Accordingly, we withdraw our original opinion and substitute the following.

This is a *quantum meruit* case. The Appellee, Amerivac, Inc. (Amerivac), successfully sued Southwestern Underground Supply and Environmental Services, Inc. (Southwestern) to recover compensation for ser-

vices rendered. Appellant, Southwestern, complains on appeal of an illegal contract, insufficient evidence, and the failure of the trial court to award attorney's fees on a successful counterclaim. We affirm.

### Statement of Facts

Southwestern is in the business of cleaning underground sewer lines. In 1989, they entered into a joint venture with another firm in order to secure work from the City of Houston. Contracts were subsequently awarded by the City and work was begun in November of the same year. In October of 1990, Southwestern entered into a written contract with Amerivac whereby Amerivac, as a subcontractor, would provide services to Southwestern for the City contract.

Under the terms of the City contract, Southwestern did not receive payment from the City until the work was approved; this process normally taking between sixty to seventy days. However, Southwestern agreed to pay Amerivac when Amerivac completed its work, less ten percent retainage to be paid to Amerivac when Southwestern was paid by the City. In effect, by "quick paying" Amerivac prior to Southwestern receiving its payment from the city, Southwestern served to finance Amerivac's operations. As was understood by both parties, Amerivac could not have continued operations without such financing.

Under their agreement, Southwestern could stop "quick paying" Amerivac if the latter failed to provide Southwestern with all of its available output. After discovering that Amerivac had breached the agreement by working for other contractors, Southwestern ceased "quick paying" and reverted to regular payment terms; paying Amerivac only when it was paid by the City. At this point, Southwestern was holding $42,000 in retainage.

The first agreement expired, and Southwestern urged Amerivac to enter into a second contract; this one allowing Southwestern to hold a twenty-five percent retainage instead of the original ten percent. There was evidence that Southwestern led Amerivac to believe that it would have to enter into the second contract in order to receive the $42,-000 retainage from work performed under the first agreement. The second contract also provided that Southwestern would revert to regular payment terms if Amerivac did not work exclusively for Southwestern. Amerivac, in need of the retained funds from the first contract, signed the second agreement on April 30, 1991. Southwestern subsequently "quick paid" Amerivac the $42,000 due under the first agreement.

Southwestern claims that Amerivac began breaching the second contract almost immediately by offering services to other general contractors and, within a few weeks, completely ceased working for Southwestern. Southwestern further alleges that it suffered substantial damages when it was required to seek other subcontractors to finish the work left uncompleted by Amerivac. At this point, Amerivac also owed Southwestern $2,233 on an open account.

Amerivac brought suit against Southwestern alleging breach of contract, fraud, and unlawful restraint of trade. Amerivac sought the retainage it had agreed would go unpaid if it breached the second agreement. Southwestern counterclaimed for recovery of the $2,233 on the open account. At the beginning of trial, the parties stipulated that the contract was void. Therefore, with the agreement of both parties, the trial court dismissed all claims and counterclaims based on the contract. Amerivac then proceeded to argue for recovery based on (1) *quantum meruit* to recover the retainage for work performed, and (2) fraud in connection with Southwestern inducing Amerivac to enter into the second contract. With regard to the fraud claim, Amerivac maintained that Southwestern promised to keep Amerivac fully occupied with work when, in fact, Southwestern did not have enough work to split among its subcontractors.

A judgment awarded Amerivac $34,123.73 actual damages in *quantum meruit,* $35,000 attorney's fees, $3,150.30 taxable court costs, plus pre-judgment and post-judgment interest. Additionally, the jury found in favor of Amerivac on its fraud claim, but the trial court apparently granted Southwestern's Motion for Judgment Notwithstanding the Verdict (JNOV); possibly reversing the fraud award and allowing Southwestern an offset

for $2,233 on an open account. However, we cannot state with certainty the grounds for the reduction of the jury award, as the JNOV is not included in the record.

### Discussion

■ In their first point of error, Southwestern contends that the trial court erred in entering judgment for Amerivac on the theory of *quantum meruit.* The essence of their argument is that, as a matter of law, no recovery was available either in law or in equity for services rendered under a contract which was void for illegality. We agree that the contract was likely illegal under Texas law since it contained an impermissible non-competition clause. *See* Free Enterprise and Antitrust Act of 1983, TEX.BUS. & COM.CODE ANN. § 15.01 *et seq.* (Vernon 1987 & Supp. 1994). Additionally, numerous cases provide support for the proposition that if Amerivac *voluntarily* entered into an illegal contract, there would be no recovery allowed in equity. *E.g. Jones v. Hanna*, 264 S.W.2d 133 ((Tex. App.—Waco 1954, no writ) (no *quantum meruit* substitute for enforcement of illegal contract; parties cannot contract away their individual rights to the public's detriment); *Montgomery Ward & Co. v. Lusk*, 52 S.W.2d 1110 (Tex.App.—Waco 1932, writ ref'd) (law intended to prohibit an act also prohibits contracts to perform the act; therefore, no enforcement of illegal contracts). Thus, if Amerivac did *voluntarily* enter into an illegal contract, they could not then recover on the contract; nor would they likely be allowed any recovery in equity. However, this suit is distinguishable from the cases cited in appellant's brief on several grounds. First, evidence was introduced that showed not only that Amerivac never intended to abide by the illegal provision in the contract, but that they, in fact, completely disregarded the clause by seeking work from other sources. In other words, Amerivac *never* violated the law. Second, there was evidence from which the jury could have found that Amerivac entered into the contract under duress. Amerivac was told that it would not be "quick paid" the $42,000 under the first contract unless Amerivac signed the second contract. Since lack of voluntariness would negate mutual assent, a necessary predicate to the formation of a contract, it would also negate the underlying contract. Therefore, *quantum meruit* would still be available. Appellant's first point of error is overruled.

■ In their second point of error, Southwestern argues that the trial court erred in entering judgment for Amerivac on the claim for *quantum meruit,* as the jury's answer was against the great weight and preponderance of the evidence and Amerivac's unclean hands were proven as a matter of law. The question presented to the jury was as follows:

QUESTION # 2: Do you find that Amerivac's claim against [Southwestern] for the reasonable value of sewer cleaning and televising work is barred by unclean hands? Answer "yes" or "no."

ANSWER: No.

For question No. 2, you are instructed that a party may be denied relief if its conduct has been inequitable, unfair and dishonest or fraudulent and deceitful with regard to the controversy in issue.

Southwestern argues that Amerivac never intended to perform under the contract and did in fact breach the contract. Therefore, Amerivac had unclean hands.

However, it appears that Amerivac was coerced into signing the contract. As stated above, Amerivac admitted that it never intended to comply with the noncompetition provision; the very provision which rendered the contract illegal.

Also, the jury was instructed without objection that the contract was "void and non-binding as a matter of law." Thus, it didn't matter whether Amerivac performed per the contract. Additionally, there was some evidence to deem a jury finding that Southwestern did not suffer serious, uncorrectable harm as required to sustain an affirmative defense of unclean hands. At the time in question, appellant had more subcontractors than it could meaningfully employ. Point two is overruled.

■ In their third point of error, appellant contends that the trial court abused its discretion in refusing to award Southwestern attorney's fees to which it was entitled. The parties stipulated that each party's attorney's fees were $35,000 and that the issue of attorney's fees would be determined by the court. Southwestern argues that it is entitled to

$35,000 because of its "recovery" of $2,233 on an open account with Amerivac. However, there were no jury questions on Southwestern's counterclaim. The judgment merely awarded Amerivac $34,123.73 in actual damages, no mention being made of recovery by Southwestern on its counterclaim. The judgment states: "This judgment is final. All relief not specifically granted is denied." There was evidence that the amount due Southwestern on the open account would be set off each week against the amount due Amerivac for its sewer cleaning services. The judgment *possibly* reflects that the damages awarded to Amerivac were offset by the $2,233 Amerivac owed to Southwestern. However, there was no judgment in the record indicating that appellant recovered on a valid claim. Given the above, it does not appear that Southwestern was a prevailing party as contemplated by the Business Code and was not entitled to attorney's fees. Therefore, point four is overruled.

Finding no error, we affirm the judgment of the trial court.