

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-16-00186-CV

**COTTER & SONS, INC.**; James F. Cotter; Alamo Towers-Cotter, LLC; Cotter 11211 Katy Freeway Building, LP; Cotter 7447 Harwin Building, LP; Cotter Equities LLC; Cotter Harwin Equities LLC; Cotter Katy Equities LLC; Cotter Katy Freeway Building, LP; et. al.,
Appellants

v.

**BJ CORPORATION** d/b/a National Building Service,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-09427
Honorable Gloria Saldaña, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 26, 2017

REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART

Appellee BJ Corporation d/b/a National Building Service (NBS) sued Appellants,[1] Brad

Simpson, and James V. "Val" Cotter[2] for breaching NBS's contracts to provide janitorial services

---

[1] Appellants are: James F. Cotter, individually; Cotter & Sons, Inc.; Alamo Towers-Cotter; LLC, Cotter 121 Katy Freeway Building, LP; Cotter 7447 Harwin Building, LP; Cotter Equities LLC;  Cotter Harwin Equities LLC; Cotter Katy Equities LLC; Cotter Katy Freeway Building, LP; Cotter Voss Building LLC; Petroleum Towers-Cotter LLC. In this appeal, we will refer to the companies as the Cotter Entities, to James F. Cotter as Cotter, and to all these parties collectively as Appellants.
[2] James V. "Val" Cotter is James F. Cotter's son.  In this appeal, we will refer to James V. "Val" Cotter as Val Cotter; and, to James F. Cotter as Cotter.

to buildings belonging to the Cotter Entities, quantum meruit, and negligent and fraudulent misrepresentation. With regard to the breach of contract claim, Appellants raised the affirmative defense of commercial bribery. In addition, Cotter & Sons asserted claims against Val Cotter and Simpson for breach of fiduciary duty and conspiracy. Based on a jury's findings, the trial court entered a judgment awarding NBS damages for its breach of contract and negligent misrepresentation claims. On appeal, Appellants raise five issues: (1) the evidence is insufficient to support the jury's finding that Appellants breached the contracts; (2) the economic-loss rule bars NBS's negligent misrepresentation damages; (3) no recovery is available under quantum meruit; (4) the trial court erred in making all the defendants jointly and severally liable; and (5) NBS is not entitled to attorney's fees because its breach of contract claim and alter ego theories are not supported by the evidence. We reverse and remand as to NBS's breach of contract and alternative quantum meruit claim, and we reverse and render on NBS's negligent misrepresentation claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants own ten commercial buildings that are the subject of this suit. Cotter was the principal in Cotter & Sons, Inc. Val, Cotter's son, and Simpson, were officers in Cotter & Sons, Inc.

Cotter & Sons became dissatisfied with the janitorial services provided to the buildings of the Cotter Entities. Consequently, Blair Jones, Val Cotter, and Simpson created Premier Facilities Solutions, LLC (Premier) to take over the janitorial services to these buildings. Cotter later had a disagreement with how Premier was operating, and told the Premier principals that he wanted Premier dissolved. Val Cotter and Simpson began negotiating an agreement with Bruce Ha, president of NBS, to purchase Premier's assets. The Asset Purchase Agreement was executed on February 5, 2010 and included a promise that NBS would be provided new janitorial contracts to clean the Cotter Buildings (the Contracts). Specifically, the agreement provided

5.11 New Janitorial Contracts. The Seller (or its affiliates) is the owner of certain commercial buildings that have been cleaned by Seller, a list of which is contained in Schedule 5.11. As a condition of this Agreement, Seller (or its affiliates) will enter into new janitorial contracts with Purchaser for the cleaning of the buildings listed in Schedule 5.11 and containing terms and conditions substantially the same as those contained in the Janitorial Contract attached as Exhibit "E".

The same day the parties executed the Asset Purchase Agreement, Val Cotter and Simpson executed new janitorial contracts with NBS on behalf of Cotter & Sons.

After Cotter & Sons slow paid and underpaid NBS's invoices, NBS terminated the Contracts, sued Cotter & Sons for breach of contract, negligent misrepresentation and quantum meruit (in the alternative). Cotter & Sons disputed Val Cotter's and Simpson's authority to sign the Contracts on behalf of Cotter & Sons, and sued both. The case proceeded to trial.

After the parties rested, the trial court held a charge conference. In the charge conference, Cotter & Sons did not object to the breach of contract or commercial bribery questions. It did, however, raise a no-evidence objection to the negligent misrepresentation question.

The jury found Cotter & Sons breached the Contracts and the Contracts were not procured by commercial bribery. The jury's verdict found damages as follows:

- Breach of contract: $431,716.84
- Negligent misrepresentation: $50,000.00
- Quantum meruit: $431,716.84 (same amount as breach of contracts)

The trial court entered judgment and awarded damages, interest, attorney's fees, and costs as follows:

- Breach of contract: $431,716.84
- Negligent misrepresentation: $50,000.00
- No award in the alternative for quantum meruit damages
- Attorney's fees for trial: $348,596.00
- Conditional attorney's fees for COA: $25,000.00
- Conditional attorney's fees for TSC: up to $12,500.00
- Interest on past due debt: $23,642.35

- •  Pre-judgment interest: $76,163.50
- •  Post-judgment interest
- •  Costs of court: $1,312.50

Appellants filed a motion for new trial contending the jury's findings on the breach of contract and commercial bribery questions were against the great weight and preponderance of the evidence. From the record before us, it appears the motion for new trial was denied by operation of law and this appeal ensued.

### BREACH OF CONTRACT

We will first address NBS's breach of contract claim and Cotter & Sons's affirmative defense of commercial bribery.

### A.  Charge Questions on Breach of Contract/Bribery

#### 1.  Question 1: Breach of Contract

The first question in the jury charge asked whether Cotter & Sons breached the Contracts with NBS. Cotter & Sons did not object to the question. The jury found Cotter & Sons breached the Contracts. Although Cotter & Sons filed a motion for new trial, the motion did not raise a legal sufficiency challenge to the jury's finding; instead, it argued the jury's finding was against the great weight and preponderance of the evidence.

#### 2.  Question 2: Bribery

As an affirmative defense to NBS's breach of contract claim, Cotter & Sons argued the Contracts were unenforceable because they were procured through commercial bribery. The second question in the jury charge asked whether the Contracts were procured by bribery. The terms "Contracts" and "bribery" were defined in the charge. NBS did not object to the question or the definitions. The jury found that the Contracts were not procured by bribery. In its motion for new trial, Cotter & Sons did not challenge the legal sufficiency of the evidence supporting the

jury's finding of no bribery; it only argued that the jury's finding was against the great weight and preponderance of the evidence.

## B.    Preservation

After a jury trial, a complaint (1) that the evidence was not factually sufficient to support a jury's finding or (2) that a jury's finding was against the great weight and preponderance of the evidence must be raised in a motion for new trial or it is waived. *See* TEX. R. CIV. P. 324(b); *Cecil v. Smith*, 804 S.W.2d 509, 512 (Tex. 1991) ("Factual insufficiency points of error are expressly required by Rule 324(b) to be raised in a motion for new trial."); *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("[A] party challenging the factual sufficiency of the evidence to support a jury finding must raise this issue in a motion for new trial to preserve error."). Similarly, after a jury trial, to preserve a no-evidence complaint for review, it must be raised in "(1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or, (5) a motion for new trial." *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985); *accord Regan v. Lee*, 879 S.W.2d 133, 135 (Tex. App.—Houston [14th Dist.] 1994, no writ). If a no-evidence complaint is not raised by one of these procedural steps, it is waived. *See Aero Energy*, 699 S.W.2d at 822; *DFW Aero Mechanix, Inc. v. Airshares Inc.*, 366 S.W.3d 204, 206 (Tex. App.—Dallas 2010, no pet.).

## C.    Legal Sufficiency Challenges Waived

Appellants argue the jury's verdict on the breach of contract claim must be reversed because the evidence conclusively establishes its affirmative defense of commercial bribery. As a threshold issue, NBS argues Appellants waived their legal sufficiency complaint because Cotter and Sons did not raise it in their motion for new trial.

To preserve a legal sufficiency challenge to NBS's breach of contract claim and its commercial bribery defense, Appellants had to raise their point by an appropriate procedural step—such as in their objections to the charge or in their motion for new trial—but they did not. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). Because they failed to properly preserve their no-evidence complaint, Appellants' legal sufficiency complaints with regard to the jury's findings are waived. *See Aero Energy*, 699 S.W.2d at 822; *DFW Aero Mechanix*, 366 S.W.3d at 206.

**D.    Factual Sufficiency Challenge**

Although Appellants waived their legal sufficiency challenges, they preserved their factual sufficiency complaints in their motion for new trial. Appellants contend the evidence is factually insufficient to support the jury's failure to find bribery.

*1.    Standard of Review*

"When a party attacks the factual sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *accord Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). "[W]e consider and weigh all of the evidence presented at trial in a neutral light . . . ." *In re C.Z.B.*, 151 S.W.3d 627, 630 (Tex. App.—San Antonio 2004, no pet.); *accord Dickey v. McComb Dev. Co.*, 115 S.W.3d 42, 44 (Tex. App.—San Antonio 2003, no pet.). If the jury's finding "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," we will reverse its finding and remand for a new trial. *See Cain*, 709 S.W.2d at 176; *accord Dow Chem.*, 46 S.W.3d at 242.

*2.    Asset Purchase Agreement*

The existence of the Asset Purchase Agreement, its contents, and the identities of the persons who signed it are undisputed. Under the Asset Purchase Agreement, the Purchaser is BJ

Corporation d/b/a National Building Services.  Seller is Premier Facility Solutions, LLC "joined herein by the sole members of Seller, Blair Jones, Brad C. Simpson, and James Val Cotter ('Owners')."  One of the recitals on the first page of the Asset Purchase Agreement states as follows:

> WHEREAS, Seller and/or Owners and Purchaser desire to enter into certain other agreements with respect to their respective operations after the Closing in accordance with these terms.

Section 2.2 of the Asset Purchase Agreement states NBS shall pay $100,000.00 "in full consideration for the purchase of the Subject Assets and the other agreements and obligations to Purchaser contained herein," and section 2.6 allocates $25,000.00 of the purchase price to the "Janitorial Contracts."  Finally, section 5.11 entitled "New Janitorial Contracts" provides the following:

> The Seller (or its affiliates) is the owner of certain commercial buildings that have been cleaned by Seller, a list of which is contained in Schedule 5.11.  As a condition of this Agreement, Seller (or its affiliates) will enter into new janitorial contracts with Purchaser for the cleaning of the buildings listed in Section 5.11 ....

### 3.      *Jury Charge and Commercial Bribery Statute*

Question 2 of the jury charge asked, "Were the Contracts procured by bribery?" "Contracts" was defined to mean Plaintiff's Exhibit Nos. 7 through 17, which consisted of eleven cleaning services contracts entered into between NBS and Cotter & Sons, Inc.  Ten of the contracts were signed on February 5, 2010, the same day the Asset Purchase Agreement was signed. Question 2 also contained instructions defining the term "bribery" as follows:

> Bribery occurs when a person who is a fiduciary intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another party on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to his principal.

> Bribery also occurs when a party offers, confers, or agrees to confer a benefit on a person who is a fiduciary on the agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to his principal.

The definitions are generally based on the manner in which the offense of commercial bribery is defined by section 32.43 of the Texas Penal Code.[3] *See* TEX. PENAL CODE ANN. § 32.43 (West 2016). We note, however, the jury charge here failed to include the clause "without the effective consent of his beneficiary" which is included in section 32.43 of the Texas Penal Code. TEX. PENAL CODE ANN. § 32.43.

### 4. *Appellants' Arguments*

Appellants argue the jury's finding that the Contracts were not procured by bribery was against the great weight and preponderance of the evidence. As previously noted, the jury charge contained two definitions of bribery: one focusing on the actions of the fiduciary, Simpson, and one focusing on the actions of the non-fiduciary, NBS; therefore, Appellants argue the jury should have answered that the Contracts were procured by bribery if either Simpson or NBS engaged in bribery as defined in the charge. Appellants rely on evidence that Simpson was a fiduciary of Cotter & Sons, and he agreed to accept—and accepted—a personal benefit in exchange for his agreement that Cotter & Sons would enter into new janitorial contracts with NBS. Appellants further rely on evidence that NBS paid a benefit to Simpson as an owner of Premier on the condition that Cotter & Sons would enter into the new janitorial services contracts.

---

[3] Texas Penal Code 32.43 provides as follows:

    (b) A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

    (c) A person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b).

  TEX. PENAL CODE ANN. § 32.43.

### 5. *Appellees' Arguments*

Appellees[4] argue that Appellants overlook the requirement that NBS must have paid the benefit and Simpson must have accepted the benefit based on an "agreement or understanding" that the benefit would influence Simpson's conduct in relation to his principal. Appellees primarily rely on the testimony of Simpson and Ha that they did not intend to give or receive a bribe.[5]

### 6. *Analysis*

In order for NBS to have engaged in bribery, the evidence must establish that it had knowledge that Simpson was a fiduciary of Cotter & Sons and the payment of the purchase price would influence Simpson is his capacity as a fiduciary. *See Ex parte Mattox*, 683 S.W.2d 93, 97 (Tex. App.—Austin 1984, pet. ref'd), *pet. ref'd*, 685 S.W.2d 53 (Tex. Crim. App. 1985) (noting State must establish offeror knew offeree was a fiduciary to prove offeror engaged in bribery). The case law does not, however, support Appellees' contention that NBS and Simpson had to agree that Simpson would use his influence as a fiduciary before the evidence would support a bribery finding. *See Adegbenro v. State*, 36 S.W.3d 658, 660 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding crime under section 32.43(c) is complete upon the making of the offer without any showing of an agreement or understanding that the fiduciary would commit the offense); *McGowen v. State*, 938 S.W.2d 732, 735 (Tex. App.—Houston [14th Dist.]), *aff'd sub*

---

[4] Both Simpson and NBS filed Appellee's briefs.

[5] Appellees also argue the jury's finding that Simpson did not breach his fiduciary duty precludes a finding that the Contracts were procured by bribery. Appellees cite *Ex parte Mattox*, 683 S.W.2d 93 (Tex. App.—Austin 1984, no writ), as support for this argument. The Austin court's analysis in *Mattox*, however, was based on an earlier version of section 32.43 which provided a fiduciary commits the offense of bribery if he intentionally or knowingly solicits, accepts, or agrees to accept any benefit as consideration for violating a duty to a beneficiary or otherwise causing harm to the beneficiary by act or omission. 683 S.W.2d at 97. The current version of section 32.43 on which the jury charge was based, however, no longer requires a showing that the offer was made as consideration for a breach of fiduciary duty. Instead, the statute and the jury charge only require a showing that the benefit will influence the fiduciary's conduct.

*nom.*, *Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1996) (noting commercial bribery crime is defined to cover the conscious act of the wrongdoer and was complete when fiduciary solicited, accepted or agreed to accept a benefit). As the Austin Court of Appeals has explained:

> Common sense dictates that when it is alleged and proved that the defendant offered or solicited a proscribed benefit, it is not necessary to further prove that the offer or solicitation resulted in a bilateral arrangement or unlawful conduct with the other party. The offense of bribery is complete when the offer or solicitation is made. … [W]here it is alleged the accused offered or solicited a benefit as consideration for an official act, it is not necessary for the State to prove the party to whom the offer or solicitation was made accepted the proposition or even understood the unlawful nature of the proposition; proof that the offer or solicitation was made by the accused with the purpose to promote or facilitate the exchange of the benefit for the official action is all that is required.

*Martinez v. State*, 696 S.W.2d 930, 932-33 (Tex. App.—Austin 1985, pet. ref'd). We agree. Common sense dictates a bilateral agreement is not a required element to establish commercial bribery.[6] Many criminal defendants are prosecuted for offering a bribe to a person who refuses to accept the bribe and instead becomes the State's witness. Similarly, many criminal defendants are prosecuted for soliciting a bribe from a person who refuses to pay the bribe and instead becomes the State's witness.

Applying the definition of bribery in the jury charge to the evidence in this case, we agree that the jury's finding that the Contracts were not procured by bribery is against the great weight and preponderance of the evidence. First, the Asset Purchase Agreement allocated $25,000.00 of

---

[6] The Austin court also quoted comments to the Model Penal Code's definition of bribery, which state:

> It is sufficient if the actor believes that he has agreed to confer or agreed to accept a benefit for the proscribed purpose, regardless of whether the other party actually accepts the bargain in any contract since. . . . The evils of bribery are fully manifested by the actor who believes that he is conferring a benefit in exchange for official action, no matter how the recipient views the transaction. . . . It is wholly appropriate, therefore, to view the action of conferring a benefit or accepting a benefit entirely from the point of view of the actor. If he meant to confer a benefit as consideration for official action or to accept a benefit for that purpose, the offense of bribery is complete.

*Martinez*, 696 S.W.2d at 933 n.2 (quoting Model Penal Code § 240.1, cmt. 4(b), (c)).

the purchase price as payment for procuring the Contracts. Because Simpson was one of the owners of Premier, the payment resulted in a benefit to Simpson. In addition, the execution of the Contracts was an express condition of the agreement. Those Contracts, signed the same day as the Asset Purchase Agreement, were executed by Simpson as a vice president of Cotter & Sons, thereby expressly establishing Simpson was executing the Contracts in his capacity as a fiduciary of Cotter & Sons. Ha also testified that he knew Simpson was a vice president of Cotter & Sons at the time the Asset Purchase Agreement was being negotiated.

The jury was charged that bribery occurs when a fiduciary agrees to accept any benefit from another party with the understanding that the benefit will influence the fiduciary's conduct in relation to the principal or when a party agrees to confer a benefit on a fiduciary with the understanding that the benefit will influence the fiduciary's conduct in relation to the principal. Given the express terms of the Asset Purchase Agreement and the Contracts, which were all executed on the same day, and Ha's testimony that he knew Simpson was a vice president of Cotter & Sons, we hold the evidence is factually insufficient to support the jury's finding that the Contracts were not procured by bribery based on the definition of bribery included in the jury charge.[7] *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (noting factual sufficiency is measured by the charge actually submitted in the absence of a valid charge objection).

We next address the negligent misrepresentation issue.

### NEGLIGENT MISREPRESENTATION

In NBS's sixth amended petition, it sued Appellants for negligent misrepresentation and argued that NBS "justifiably relied on the representations by entering into below-market contracts which proximately caused its injury for which it seeks recovery." NBS also alleged that "the

---

[7] As noted previously, the charge omits the clause "without the consent of his beneficiary" which is included in section 32.43(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 32.43(b).

Cotter Defendants made negligent misrepresentations to [NBS] to induce its continued performance at below market rates."

At the charge conference, Appellants raised no-evidence objections to the negligent misrepresentation question and its associated damage question. The trial court overruled the objections.

Question 13 in the charge asked whether "Cotter & Sons or its agents [made] a negligent misrepresentation on which NBS justifiably relied." The jury answered *Yes*, and found an economic loss to NBS for $50,000.00. The trial court awarded NBS $50,000.00 in damages for negligent misrepresentation.

### A.     Appellants' Arguments

Citing *DeLanney*, Appellants argue NBS's injury is the economic loss suffered by Cotter & Sons's failure to pay the contract price for NBS's services, and *DeLanney* bars a recovery for tort damages when the defendants' only duty arises from the contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

### B.     NBS's Arguments

NBS argues Appellants waived their factual sufficiency argument because it was not raised in Appellants' motion for new trial. Citing *Formosa Plastics*, NBS also argues that Cotter & Sons had an independent legal duty not to induce NBS to enter into the Asset Purchase Agreement. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

### C.     Standard of Review

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the

adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We review the evidence in the light most favorable to the verdict, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *accord Graham Cent. Station*, 442 S.W.3d at 263. However, "we cannot 'disregard undisputed evidence that allows of only one logical inference.' By definition, such evidence can be viewed in only one light, and reasonable jurors can reach only one conclusion from it. Jurors are not free to reach a verdict contrary to such evidence . . . ." *City of Keller*, 168 S.W.3d at 814.

### D.    Applicable Law

The parties agree that if a contract exists a negligent misrepresentation claim can be asserted if there is a duty and injury independent from the contract. They disagree, however, on whether Cotter & Sons had a duty independent from the Contracts and on the nature of NBS's injuries.

Generally, a plaintiff may not recover tort damages for the breach of a contractual duty. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011). "When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Id.* at 417 (quoting *DeLanney*, 809 S.W.2d at 495). In other words, when a "plaintiff [seeks] damages for breach of a duty created under contract, as opposed to a duty imposed by law, tort damages [are] unavailable." *Id.* (citing *DeLanney*, 809 S.W.2d at 494).

In a claim for negligent misrepresentation, the plaintiff must prove the defendant "breached a *legal* duty independent of its *contractual* duties" and prove that the plaintiff suffered an independent injury. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998)

(per curiam) (emphasis original). "The nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 685 (Tex. App.—San Antonio 2012, no pet.).

**E.     Analysis**

Appellants' challenge to NBS's right to recover for negligent misrepresentation is a legal sufficiency—not a factual sufficiency—complaint. Appellants preserved their legal sufficiency complaint by making a no-evidence objection to the negligent misrepresentation question being included in the charge, and we may consider the issue.

In its petition and at trial, NBS claimed that Cotter & Sons and Simpson committed the tort of negligent misrepresentation by making false statements to induce NBS to buy equipment needed to perform the cleaning contracts, to induce NBS to continue performing the janitorial contracts while Cotter & Sons was failing to pay NBS as agreed, and to assure NBS that Cotter & Sons would maintain the Contracts for two to three years.

To determine whether NBS can recover in tort under these circumstances, we consider the source of Cotter & Sons's duty to NBS and the nature of NBS's injury. *See DeLanney*, 809 S.W.2d at 494; *Flying J Inc.*, 373 S.W.3d at 685. We begin with the nature of the injury.

*1.     Evidence of Nature of the Injury*

When NBS's counsel examined Bruce Ha, counsel asked him about the nature of NBS's injuries as follows:

> Q. When you bought the assets of Premier and you were talking about the value of the cleaning products and the vans and all the hard assets, what I would call the hard assets, did what you bought from Premier, was that all you needed to clean the buildings that you were stepping into to clean in San Antonio and Houston, or did you have to buy more?
>
> A. That's not enough, but I think they're pretty good amount number of chemicals there, so we purchased it.

Q. But was that it or did you have to purchase more assets or more cleaning supplies to fulfill your obligation?

A. I think when we started with the Houston buildings, already at the time, we put just about, you know, extra and started with the Houston buildings first.

Q. So it wasn't just like mops and buckets, but equipment, like vacuums and—

A. Oh, yes. Machines and a lot of, I mean, about when we started, at least 30 different items we need.

Q. Do you recall how much more money you had to spend?

A. I spent about 800,000, [sic] you know. At least we need 80,000.

Q. I'm sorry, you spent an additional 80,000?

A. Right. Putting the new—I mean, we start new building, always bring new equipment, new mop buckets, new—

Q. Is that new equipment you would not have purchased, but for the expectation that you were going to go clean these buildings for Cotter & Sons?

A. Yeah.

Q. Now, did I understand that you had to borrow money to cover your costs because you weren't getting paid by Cotter and company?

A. Right. I borrowed, the company, about $100,000.

Q. And you borrowed that from a third party, from a bank?

A. Yes.

Q. And what did you use that money for?

A. Well, mostly in paying labor.

Q. So you're coming out of pocket to pay your labor and hoping that Mr. Cotter or Cotter & Sons pays you to cover—to make up that shortfall.

A. Yeah. . . .

2.      *No Independent Injury*

On the same day that NBS and Premier executed the Asset Purchase Agreement, Simpson and Val Cotter signed the Contracts with NBS on behalf of Cotter & Sons. The contract terms include a provision that "[t]his agreement shall be in effect for two years from the effective date with a one year automatic renewal." Ha testified that to perform the Contracts for the Houston buildings, NBS spent about $80,000 to purchase new equipment and supplies. Ha also testified

that, while NBS was performing the cleaning contracts, it had to borrow money because it was not being paid by Cotter & Sons.

The evidence establishes that, for each of NBS's complained of injuries, NBS was injured by Cotter & Sons's failure to pay NBS under the terms of the Contracts. Viewing the evidence in the light most favorable to the finding, we conclude NBS did not suffer an independent injury. *See D.S.A., Inc.*, 973 S.W.2d at 663. As in *D.S.A., Inc.*, "[NBS's] negligent misrepresentation claim must fail for lack of any independent *injury*." *See id.*

### 3. *No Independent Duty*

Viewing the evidence in the light most favorable to the finding, we conclude the evidence establishes that Cotter & Sons entered into Contracts with NBS and Cotter & Sons failed to pay NBS the full amount owed under the Contracts. However, there is no evidence that Cotter & Sons had a separate, independent duty outside of the Contracts to pay NBS for equipment NBS purchased to perform the janitorial services, to make monthly payments to NBS, or to continue the janitorial contracts for any period of years.

Based on the record, Cotter & Sons's duties to NBS arise solely from the Contracts, and there is no evidence that Cotter & Sons breached any independent duty to NBS. Accordingly, we reverse that portion of the judgment that awards NBS damages for negligent misrepresentation and render judgment on this claim for Appellants.

## QUANTUM MERUIT

In addition to suing Appellants for breach of contract, Appellee also asserted a claim for quantum meruit. *See* TEX. R. CIV. P. 48 ("Alternative Claims for Relief"). The jury found damages of $431,716.84 for breach of contract. The jury found the same amount of damages for the

alternative claim of quantum meruit. The judgment awarded damages for breach of contract, but it did not award damages in the alternative for quantum meruit.

## A.     Appellants' Arguments

Appellants argue this court cannot award damages for quantum meruit for two reasons: the trial court did not award quantum meruit damages in the alternative, and quantum meruit recovery is barred by an illegal contract.

## B.     NBS's Arguments

NBS argues there is sufficient evidence to support the jury's finding of damages on quantum meruit. NBS prays that if this court reverses the commercial bribery finding, the court will nevertheless render judgment in NBS's favor on its alternative the issue of quantum meruit claim and award damages and attorney's fees without remanding for a new trial.

## C.     Remand is Appropriate

"A party prevailing on two or more theories need not formally waive all other alternative theories of recovery in electing a remedy, and where the prevailing party fails to elect a remedy, the trial court 'should utilize the findings affording the greater recovery and render judgment accordingly.'" *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 293 (Tex. App.—San Antonio 2011, pet. denied) (quoting *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)). If the jury finds in favor of the plaintiff on multiple alternative theories of recovery, but the theory of recovery on which the trial court based its judgment is reversed on appeal, the court of appeals must remand all theories of recovery to the trial court. *Id.*

Because we sustained Cotter & Sons' breach of contract and commercial bribery issues, we are precluded from rendering judgment for NBS on the quantum meruit damages. *See id.* The jury found quantum meruit damages for NBS, but the trial court's judgment did not award NBS

any damages on that claim—not even in the alternative. NBS does not provide any authority by which this court could reverse the trial court's judgement on NBS's breach of contract claim but award damages and attorney's fees based on quantum meruit.

Because we reverse the portion of the trial court's judgment on NBS's breach of contract claim upon which the trial court's judgment was based, the quantum meruit claim must also be remanded to the trial court. *See Drury Sw., Inc.*, 350 S.W.3d at 293.

## D. Quantum Meruit Sometimes Available for Illegal Contract

"[N]umerous cases provide support for the proposition that if [a party] *voluntarily* entered into an illegal contract, there would be no recovery allowed in equity." *Sw. Underground Supply & Envtl. Services, Inc. v. Amerivac, Inc.*, 894 S.W.2d 15, 18 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing cases). But even in the presence of an illegal contract, under certain circumstances, a party may be able to recover under quantum meruit. *See id.* Accordingly, we reject Appellants' argument that quantum meruit recovery is barred by an illegal contract.[8]

## JOINT AND SEVERAL LIABILITY & ATTORNEYS' FEES

Because we reverse the breach of contract and the quantum meruit claims and remand those claims for a new trial and because we render that NBS take nothing on its negligent misrepresentation claim, all the jury's liability findings have been reversed; therefore, addressing the issue of joint and several liability would be advisory. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (appellate courts are prohibited from deciding moot controversies); *see also Guillen v. U.S. Bank, N.A.*, 494 S.W.3d 861, 864–65 (Tex. App.—Houston

---

[8] We also note this court's reversal of NBS's breach of contract claim is based on our finding that the evidence is factually insufficient to support the jury's failure to find bribery based on the charge as submitted. This court does not hold the Contracts are illegal contracts.

[14th Dist.] 2016, no pet.) ("appellate courts lack jurisdiction to decide moot controversies and render advisory opinions…").

In addition, because we also reverse the trial court's judgment with regard to the breach of contract and the quantum meruit claims and remand those claims for a new trial, we also must reverse and remand the award of attorney's fees. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 75 (Tex. App.—San Antonio 2007, pet. denied).

## CONCLUSION

Because the jury's finding of no commercial bribery—according to the charge's definition—is against the great weight and preponderance of the evidence, we reverse the trial court's judgment as to NBS's breach of contract claim and remand that cause to the trial court for a new trial. Because we reverse the trial court's judgment with regard to the breach of contract claim, and the trial court did not award any damages to NBS on its alternative quantum meruit claim, we reverse the trial court's judgment with regard to the quantum meruit claim and remand that cause to the trial court for further proceedings. Because Appellants' duty to NBS arose only under the Contracts, and NBS's injuries were not independent of the contracts, we reverse the trial court's judgment as to NBS's negligent misrepresentation claim and render judgment for Appellants that NBS take nothing on its negligent misrepresentation claim.

Patricia O. Alvarez, Justice