**DFW AERO MECHANIX,
INC., Appellant,**

v.

**AIRSHARES INCORPORATED,
INC., Appellee.**

No. 05–09–00317–CV.

Court of Appeals of Texas,
Dallas.

June 24, 2010.

Rehearing Overruled Aug. 13, 2010.

Jeffrey L. Clark, Kelsoe, Anderson, Khoury & Clark, P.C., Lance Eric Caughfield, Kelsoe, Anderson, Khoury & Clark, L.L.C., Dallas, for Appellant.

Shauna J. Wright, for Appellee.

Before Justices MORRIS, LANG, and MURPHY.

## OPINION

Opinion By Justice MORRIS.

This appeal arises out of a lawsuit DFW Aero Mechanix, Inc. filed to foreclose its lien and security interest in an aircraft owned by Airshares Incorporated, Inc. After a jury trial, the trial court rendered judgment that DFW Aero take nothing by its suit and removed the lien as invalid and unenforceable. In two issues, DFW Aero argues the evidence was legally and factually insufficient to support the jury's findings. For the reasons set forth below, we affirm the trial court's judgment.

### I.

DFW Aero performed certain inspections and repair work on a Beech aircraft pursuant to a contract with Alternative Air, Inc. Although Alternative Air did not own the aircraft, it requested DFW Aero to conduct inspections and repairs in contemplation of executing a lease purchase agreement with the owner of the aircraft, Airshares. The record reveals that the lease purchase agreement was not executed by Airshares itself but by Central Virginia Aviation, Inc., a maintenance and aircraft sales company affiliated with Airshares through the common ownership of Dennis "Chip" Harrup.

On June 27, 2006, before the lease purchase agreement was executed, the aircraft was flown to DFW Aero. Alternative Air executed the lease purchase agreement ten days later, on July 6, 2006. That agreement provided in part as follows:

C. Upon acceptance of this agreement, the following will be completed:

a. Maintenance required to comply with the following will be completed by [Alternative Air]:

i. Airworthiness Discrepancies (see attached)

ii. Past Due AD's & SB's requiring completion

iii. Engine "MORE" registration & Revision 4 implementation

iv. Phase 1–4 Inspection & Repairs

On July 12, 2006, Alternative Air signed a maintenance agreement with DFW Aero. In addition to agreeing to pay $6,000 for the Phase 1–4 inspection referenced in the lease purchase agreement, Alternative Air agreed to: (1) an hourly labor rate of $70 for discrepancy and repair actions, (2) vendor services paid as billed, without addi-

tional markup, (3) parts paid as billed, with up to a 5% markup, and (4) completion of requirements of FAA conformity inspection for "Part 135."

DFW Aero performed the various inspections and repairs and relinquished the aircraft to Alternative Air on August 17, 2006, before it had been fully paid for its services. Thereafter, Airshares terminated the lease purchase agreement when Alternative Air defaulted on its payment obligations. Ultimately, DFW Aero sought payment for its work from Airshares, which refused to pay the outstanding bill. DFW Aero then filed a mechanic's lien statement on the aircraft asserting it was owed the sum of $30,905.68 for inspections and repairs pursuant to a contract with Alternative Air. It then filed this lawsuit against Airshares to foreclose on its lien and security interest. Airshares filed an answer and counterclaim asserting, among other things, that it had not requested, authorized, or consented to the work DFW Aero performed on its aircraft. Airshares also sought the removal of the lien as invalid and unenforceable.

The matter proceeded to trial. The parties specifically agreed to submit the issue of consent to the jury.[1] The jury was asked a three-part question with respect to whether Harrup, as authorized agent for Airshares and Central Virginia Aviation, gave his consent for DFW Aero to perform inspection, maintenance, or repairs on the aircraft by (a) written consent, (b) verbal consent, or (c) consent through conduct. The jury answered "no" to each part of the question. In accordance with the jury's verdict, the trial court rendered a take-nothing judgment on DFW Aero's claims and ordered DFW Aero's lien removed from the aircraft. This appeal followed.

## II.

In two issues, DFW Aero challenges the legal and factual sufficiency of each of the jury's findings on the consent issue.[2] Before we analyze the merits of DFW Aero's arguments, however, we first discuss the prerequisites for presenting a complaint for appellate review. In general, the record must demonstrate that the complaint was made to the trial court by a timely request, objection or motion, and the trial court either (1) expressly or implicitly ruled or (2) refused to rule on the request, objection, or motion. TEX.R.APP. P. 33.1(a). More specific preservation requirements pertain, however, to legal and factual sufficiency complaints. To preserve a legal sufficiency challenge for appeal after a jury trial, an appellant must: (1) move for an instructed verdict, (2) move for a judgment notwithstanding the verdict, (3) object to the submission of the jury question, (4) move to disregard the jury finding, or (5) move for a new trial. *See Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991); *In re Estate of Blakes,* 104 S.W.3d 333, 335–36 (Tex.App.-Dallas 2003, no pet.). Similarly, to complain on appeal about the factual sufficiency of the evidence, the party must present the specific complaint to the trial court in a motion for new trial. TEX.R. CIV. P. 324(b)(2),(3); *Cecil,* 804 S.W.2d at 510.

In its appellate brief, DFW Aero challenges the legal and factual sufficiency of each of the three jury findings on consent. Our review of the record, however, reveals that DFW Aero did not file a motion for new trial. It has thus failed to preserve its factual sufficiency complaints. *See* TEX.R. CIV. P. 324(b)(2),(3); *Cecil,* 804

---

1. We are not called upon to address whether "consent" was the proper issue to be submitted to the jury.

2. Airshares has not filed a brief in this appeal.

S.W.2d at 510. The only legal sufficiency challenge DFW Aero presented to the trial court was in its motion for judgment notwithstanding the jury verdict. In the motion, DFW Aero argued that the trial court should disregard the jury finding of no written consent because the lease purchase agreement established Airshares's written consent to the inspections and repairs it performed on the aircraft as a matter of law. The motion contains no complaint about the jury's adverse findings on verbal consent and consent through conduct. Thus, DFW Aero has failed to preserve for appellate review its legal sufficiency challenges to these two jury findings. Accordingly, our discussion and analysis will be limited to the legal sufficiency challenge DFW Aero presented to the trial court with respect to the jury's finding of written consent.

Where, as here, an appellant challenges the legal sufficiency of the evidence to support a jury finding, we consider all the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex.2005). If more than a scintilla of evidence supports the jury's finding, the legal sufficiency challenge will fail. *See id.* at 813–14.

■ DFW Aero contends that the lease purchase agreement between Airshares (actually Central Virginia Aviation) and Alternative Air conclusively establishes the owner's written consent to the work performed by DFW Aero as a matter of law. We disagree. At trial, Harrup testified that he never authorized or consented to DFW Aero performing any work on the aircraft. Our review of the lease purchase agreement reveals that Alternative Air was to have completed certain maintenance, inspections, and repairs on the aircraft. The only mention of DFW Aero in the agreement, however, is with respect to an escrow account stating funds in the account—to be established by Alternative Air—would be "dispersed upon invoice and/or part and vendor requirements to Aero Mechanics [sic], Addison, Texas, for the maintenance required to bring the aircraft into airworthy status and flight operation." Harrup testified that he consented to the lease purchase agreement with Alternative Air going forward but never consented to DFW Aero doing the work contemplated by the agreement. Harrup further testified that Airshares did not have any communications with DFW Aero about the details of the work to be performed. Moreover, there was testimony by Harrup that some of the work performed by DFW Aero was not referenced whatsoever in the lease purchase agreement. Harrup testified that "I consented to Alternative Air, the purchaser, to do whatever work they wanted for their due diligence for the purchase of the aircraft" and "my signing of the lease gives [Alternative Air] the authority to enter into a maintenance contract to have that work done, but I am not entering into a maintenance agreement."

After reviewing the evidence under the applicable standard, we conclude that a reasonable jury could have found that the execution of the lease purchase agreement did not constitute Airshares's written consent for DFW Aero to perform work on Airshares's aircraft. Instead, the jury could have considered the lease purchase agreement simply as the aircraft owner's acknowledgment that Alternative Air was going to have certain work performed on the aircraft and that it had selected DFW Aero to perform the work. Because the evidence does not establish written consent as a matter of law, we reject DFW Aero's

legal sufficiency challenge and resolve this issue against it.

We affirm the trial court's judgment.