Robert LOWRY, MD; Neurology and Neurophysiology Associates, P.A.; JCMLR, P.A.; and Lynnell Lowry, M.D., Appellants

v.

Peter A. TARBOX, M.D. and/or d/b/a Peter A. Tarbox, M.D., P.A., Appellees

No. 04-16-00416-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: October 25, 2017

Mark Anthony Cevallos, Miller & Bicklein, 8207 Callaghan Road, Suite 250, San Antonio, TX 78230, Kevin B. Miller, Law Offices of Miller & Biecklein, 8207 Callaghan Road, Suite 250, San Antonio, TX 78230, for Appellants.

John M. Castillo, Farrimond Castillo & Bresnahan, P.C., 130 E. Travis, Suite 350, San Antonio, TX 78205, Donald Max Kaiser Jr., KAISER SACCO, 1431 Greenway Drive, Suite 615, Irving, TX 75038, for Appellees.

Sitting: Karen Angelini, Justice, Luz Elena D. Chapa, Justice, Irene Rios, Justice

## OPINION

Opinion by: Irene Rios, Justice

This appeal arises from a dispute between Dr. Peter Tarbox and Dr. Robert Lowry regarding a neurology practice in which they shared an ownership interest. Appellee Dr. Tarbox brought suit against appellants Dr. Lowry, Neurology and Neurophysiology Associates, P.A. (NNPA), JCMLR, P.A., and Dr. Lynnell Lowry, alleging several causes of action. The jury found in favor of Dr. Tarbox and awarded

both damages and exemplary damages. On appeal, appellants assert numerous legal and factual sufficiency challenges, as well as challenges to the jury charge, admission of evidence, the award of attorney's fees, and application of the statutory cap on exemplary damages. For the following reasons, we reform the trial court's judgment and affirm the judgment as reformed.

## BACKGROUND

In 2000, Dr. Tarbox and Dr. Lowry entered a contract ("the Contract") to become joint owners of NNPA, a neurology medical practice. In 2004, the doctors accepted another partner, Dr. Yanko Yankov. At that time, the three partners created bylaws and signed a Stock Redemption Agreement. Dr. Lowry was the managing partner of NNPA as majority shareholder. Alamo Healthcare Systems (Alamo Healthcare), a company owned by Dr. Lowry, began serving as NNPA's management company in 2004, with Dr. Tarbox's and Dr. Yankov's approval.

Dr. Yankov left the practice in 2010. In December 2010, Dr. Tarbox terminated his relationship with NNPA and sued appellants, asserting claims for: breach of contract; breach of the Stock Redemption Agreement; shareholder oppression and breach of the fiduciary duty owed to a minority owner; fraud and negligent misrepresentation; fraudulent transfer; tortious interference with the contracts between Dr. Tarbox and NNPA; and civil conspiracy.

Dr. Tarbox alleged he discovered in 2009 that Dr. Lowry directed a billing scheme which violated the contractual terms for Dr. Tarbox's compensation. According to Dr. Tarbox, when the three doctors began the partnership, they intended to grow NNPA's practice. In order to accomplish that growth, the doctors anticipated adding additional neurologists and physician assistants to the practice on a contract basis. According to Dr. Tarbox, the Contract provided that when NNPA contracted with the additional neurologists and physician assistants, Dr. Tarbox would be compensated for the revenue generated through the contracted employees' practices. Dr. Tarbox additionally alleged he discovered Dr. Lowry had directed that the contracted employees be designated as employees of JCMLR, which is a separate entity owned solely by Dr. Lowry. Because of that designation, only Dr. Lowry profited from the revenue generated by those employees.

Dr. Tarbox also alleged Alamo Healthcare billed insurance carriers for the services of the contracted physicians improperly by using Dr. Tarbox's license prior to the contracted physicians being credentialed with the carriers or licensed to practice medicine in Texas. Dr. Tarbox alleged that when this billing scheme occurred, he did not receive compensation for the use of his license. Dr. Tarbox alleged he should have received 33 1/3% of the gross receipts for the fees generated under his license, as stated in the Contract. Appellants responded that Dr. Tarbox's compensation under the Contract was based only upon revenue generated by services he personally performed.

Following a trial on the merits, the jury returned a verdict in favor of Dr. Tarbox and awarded both damages and exemplary damages.

This appeal followed.

## ANALYSIS

### Sufficiency of the Evidence

#### *Standard of Review*

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden

of proof, it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena,* 442 S.W.3d 261, 263 (Tex. 2014) (per curiam) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)). Our review of such a challenge considers the evidence in the light most favorable to the verdict and indulges every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 821-22, 827 (Tex. 2005). The finding will be upheld if more than a scintilla of evidence supports it. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987).

When reviewing for factual sufficiency, we consider and weigh all the evidence, not just that supporting the finding. *See Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003). However, we will not reverse unless "the evidence which supports the jury's finding is so weak as to [make the finding] clearly wrong and manifestly unjust." *Star Enter. v. Marze,* 61 S.W.3d 449, 462 (Tex. App.— San Antonio 2001, pet. denied); *see Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### Application

**The Contract: The Payment of Revenues Agreement**

In issue one, appellants contend the evidence is legally and factually insufficient to support the jury's finding in response to Question No. 1 that the parties agreed Dr. Tarbox was entitled to payment of 33 1/3% of the revenues collected under his medical license.[1] Additionally, in issue three, appellants contend the evidence does not support the jury's assessment of damages resulting from NNPA's breach of contract.

*Existence of the Payment of Revenues Agreement*

Question No. 1 of the jury charge asked the jury whether Dr. Tarbox and NNPA agreed that Dr. Tarbox "was entitled to thirty-three and one-third percent (33 1/3%) of the gross receipts for patient fees collected under his medical license from activities performed within the clinic setting." The jury answered: "Yes." Appellants argue the jury's answer ignored Dr. Lowry's testimony that the agreement alleged by Dr. Tarbox did not exist and that doctors were not paid for patients they did not see.

The Contract admitted into evidence states Dr. Tarbox[2] shall receive "thirty three and 1/3 percent (33.3%) of the gross receipts for patient fees received by the Company the prior calendar month, generated through [Dr. Tarbox's] license, from activities performed within the clinic setting." Both Dr. Tarbox and Dr. Lowry testified regarding the contract terms pertinent to Dr. Tarbox's compensation.

Dr. Tarbox testified the provision "generated through [his] license" required that

---

1. Appellants did not plead or otherwise challenge the contract terms as ambiguous, nor do they advance this argument on appeal. Therefore, we will analyze this issue as presented—only for sufficiency of the evidence to support the jury's finding that the parties agreed Dr. Tarbox was entitled to payment of 33 1/3% of all revenues collected under his medical license.

2. Dr. Tarbox testified the specific contract between himself and NNPA had been lost. However, his contract, and specifically the terms for his compensation, were identical to the contract between Dr. Yankov and NNPA. Dr. Yankov's contract was admitted into evidence, and all parties testified to the contract terms by using and referring to Dr. Yankov's contract. Appellants did not object to the use of Dr. Yankov's contract to establish the terms of Dr. Tarbox's contract.

he be compensated for any revenue generated using his medical license. Dr. Tarbox also testified the parties agreed he was entitled to payment for fees generated for services billed and collected using his license but rendered by other doctors. Dr. Tarbox testified he originally received compensation for services rendered by another doctor in the practice. According to Dr. Tarbox, he discovered he was not receiving compensation for fees billed under his license but generated by other doctors sometime in late 2009. Dr. Tarbox testified appellants refused to compensate him for those fees.

In contrast, Dr. Lowry testified NNPA's general practice of compensation is that each doctor is paid a percentage of the revenues generated from the patients treated by that doctor, regardless of whose license the treatment was billed under. Dr. Lowry testified that Dr. Tarbox was "owed 33 percent under—is billed under his license, and NNPA would get sixty-seven percent." Specifically, Dr. Lowry testified that "Dr. Tarbox only got paid for the patients—the one third for the patients he saw," and was not paid for the patients seen by other doctors but billed under his license. Dr. Lowry testified that the provision "from activities performed within the clinic setting" meant that Dr. Tarbox was to be paid only for patients treated by him in the clinic, excluding revenue generated for patients treated by other doctors in the clinic.[3]

Considering the evidence in the light most favorable to the verdict, we conclude a reasonable factfinder could have found the evidence sufficient to support the existence of an agreement between the parties that Dr. Tarbox would be compensated based upon all revenue collected under his license, including that generated by other

doctors. Although Dr. Tarbox and Dr. Lowry presented conflicting testimony, the Contract together with Dr. Tarbox's testimony is sufficient to provide a reasonable basis for the jury's finding that the parties reached an agreement. This evidence presents more than a mere scintilla to support the jury's finding. Moreover, appellants have not demonstrated "no evidence supports the adverse finding." Additionally, upon considering and weighing all of the evidence in the record, including Dr. Lowry's testimony directly contradicting that of Dr. Tarbox, we conclude the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, we conclude the evidence is both legally and factually sufficient to support the jury's answer to Question No. 1 that the parties agreed to the payment of revenues as described by Dr. Tarbox.

Issue one is overruled.

*Breach of Contract Damages*

■ In issue three, appellants repeat their argument that the evidence did not support a finding that a payment of revenues agreement existed. Appellants reason that because the evidence did not support the jury's finding the agreement existed in response to Question No. 1, the evidence also does not support the jury's answer with regard to damages in Question No. 3.

Question No. 3 asked the jury to assess damages resulting from NNPA's breach of contract, specifically its failure to pay Dr. Tarbox thirty-three and one-third percent of gross receipts collected under his license. The question contained three subparts: (1) "Thirty-three and one-third percent (33 1/3%) of the gross receipts for patient fees generated under Peter A. Tarbox, M.D.'s medical license for patients

3. It is undisputed that Dr. Tarbox was paid a different percentage of revenues generated

through the hospital setting. Those revenues are not relevant to this appeal.

treated personally by Peter A. Tarbox, M.D.[;]" (2) "Thirty-three and one-third percent (33 1/3%) of the gross receipts for patient fees generated under Peter A. Tarbox, M.D.'s medical license from activities for patients treated by Dr. Lobar and Dr. Frias[;]" and (3) "Thirty-three and one-third percent (33 1/3%) of the gross receipts for patient fees collected under Peter A. Tarbox, M.D.'s medical license after December 23, 2010[.]"

Lizbeth Martinez, the bookkeeper for NNPA and all of Dr. Lowry's personally-owned entities, testified regarding the revenues generated under Question No. 3's subparts and the amounts Dr. Tarbox would have been paid under each subpart. Ms. Martinez testified Dr. Tarbox was not paid thirty-three and one-third percent of revenues generated through his license for patients he treated personally in the amount of $20,997 or for services conducted by Dr. Lobar and Dr. Frias under Dr. Tarbox's license. Ms. Martinez also testified Dr. Tarbox was not paid thirty-three and one-third percent of revenue for services rendered after December 23, 2010. Ms. Martinez's testimony corresponds with the damages awarded by the jury in Question No. 3 for breach of contract.

Appellants argue that Dr. Lowry testified contrary to each of the three subparts of Question No. 3, and, because of that testimony, the evidence supporting the jury's damage award is legally and factually insufficient. However, the mere presentation of evidence contrary to the jury verdict does not provide a valid basis to challenge the legal sufficiency of the evidence to support a jury verdict. *See Danet v. Bhan*, 436 S.W.3d 793, 797 (Tex. 2014). Rather, appellants must demonstrate the evidence establishes conclusively the opposite of the vital fact or there is no more than a scintilla of evidence to support the verdict. *Id.* Additionally, the mere fact that Dr. Lowry testified contrary to the jury's findings does not provide ample basis to overturn the jury verdict based upon a factual sufficiency challenge; we consider all the evidence. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Further, we do not weigh or assess the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different finding could be supported. *See City of Keller*, 168 S.W.3d at 819-21.

Considering this evidence in the light most favorable to the challenged finding, we conclude a reasonable factfinder could have found the evidence sufficient to support the jury's finding of damages awarded for breach of contract. Further, despite Dr. Lowry's testimony disputing the theory under which the damages were awarded, the evidence presented by Dr. Tarbox through Ms. Martinez's testimony is not so weak as to render the jury's verdict clearly wrong and manifestly unjust. Accordingly, the evidence was factually sufficient to support the jury's finding of damages for breach of contract.

Issue three is overruled.

**The Stock Redemption Agreement**

In issue four, appellants contend the evidence is legally and factually insufficient to support the jury's finding to Question No. 4 that NNPA failed to comply with the Stock Redemption Agreement. *Preservation*

Following a jury trial, a complaint (1) that the evidence was not factually sufficient to support a jury's finding or (2) that a jury's finding was against the great weight and preponderance of the evidence must be raised in a motion for new trial or it is waived. *See* Tex. R. Civ. P. 324(b); *Cecil v. Smith*, 804 S.W.2d 509, 512 (Tex. 1991) ("Factual insufficiency points of error are expressly required by Rule

324(b) to be raised in a motion for new trial."); *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("[A] party challenging the factual sufficiency of the evidence to support a jury finding must raise this issue in a motion for new trial to preserve error."). Similarly, following a jury trial, to preserve a no-evidence complaint for review, the complaint must be raised in "(1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or, (5) a motion for new trial." *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985); *accord Regan v. Lee*, 879 S.W.2d 133, 135 (Tex. App.—Houston [14th Dist.] 1994, no writ). If a no-evidence complaint is not raised by one of these procedural steps, it is waived. *See Aero Energy*, 699 S.W.2d at 822; *DFW Aero Mechanix, Inc. v. Airshares Inc.*, 366 S.W.3d 204, 206 (Tex. App.—Dallas 2010, no pet.).

### *Sufficiency Challenges Waived*

▮ Appellants specifically argue that for the jury to have found NNPA failed to comply with the Stock Redemption Agreement, the jury must have improperly ignored evidence that conclusively established Dr. Tarbox failed to satisfy a required condition contained in the Stock Redemption Agreement, which was necessary to invoke his entitlement to a buyout.

Appellants filed both a motion to disregard the jury findings and a motion for new trial. In their motion to disregard, appellants requested that the trial court disregard the jury findings on Question No. 4 because "[t]here is no evidence of damages and legally and factually insufficient evidence and the finding of damages

should be disregarded because Defendants were not allowed to put into evidence an offer that was made pursuant to the Stock Redemption Agreement." In their motion for new trial, appellants moved for new trial only on the "Breach of Contract-Stock Redemption Agreement" cause of action. Appellants specifically asserted "there is legally and factually insufficient evidence of any damages, to support any award of damages. . . ."

To preserve their legal and factual sufficiency challenges regarding the jury's finding that NNPA failed to comply with the Stock Redemption Agreement, appellants were required to raise their points by an appropriate procedural step—such as in their motion to disregard the jury findings or motion for new trial—but they did not do so. *See Aero Energy*, 699 S.W.2d at 822. Because appellants failed to properly preserve their legal and factual sufficiency complaints, appellants' sufficiency complaints with regard to the jury's findings addressing NNPA's failure to comply with the Stock Redemption Agreement are waived. *See Aero Energy*, 699 S.W.2d at 822; *DFW Aero Mechanix*, 366 S.W.3d at 206.

Issue four is overruled.

### Breach of Fiduciary Duty

In issue seven, appellants contend the evidence is legally and factually insufficient to support the jury's finding in Question No. 6 that Dr. Lowry failed to comply with his fiduciary duty to NNPA. Question No. 6 asked the jury: "Did Robert Lowry, M.D. fail to comply with his fiduciary duty to NNPA?" The jury was instructed:

As a majority shareholder, director, or officer of NNPA, Robert Lowry, M.D. owed NNPA a fiduciary duty.

To prove that Robert Lowry, M.D. failed to comply with his duty to NNPA, Peter Tarbox, M.D. must show—

a. the transactions in question were not fair and equitable to NNPA; and

b. Robert Lowry, M.D. did not make reasonable use of the confidence that NNPA placed in him; and

c. Robert Lowry, M.D. failed to act in the utmost good faith or exercise the most scrupulous honesty toward NNPA; and

d. Robert Lowry, M.D. placed his own interests before NNPA, used the advantage of his position to gain a benefit for himself at the expense of NNPA, or placed himself in any position where his self-interest might conflict with his obligations as a fiduciary; and

e. Robert Lowry, M.D. failed to fully and fairly disclosed [ (sic) ] all important information to NNPA concerning the transactions.

The jury answered "yes."

In their briefs, appellants and Dr. Tarbox agree the breach-of-fiduciary-duty cause of action focuses on two transactions: an outside real estate investment involving Dr. Lowry and Dr. Yankov and NNPA's payment of management fees to Alamo Healthcare.

*Outside Real Estate Investment*

In 2007, Dr. Lowry and Dr. Yankov engaged in a personal real estate venture, for which the real estate loan was carried in Dr. Yankov's name. The venture failed in 2009. To pay off the real estate loan and avoid foreclosure on the subject property, approximately $130,000 in cash was withdrawn from NNPA's business account. This transaction was carried in NNPA's accounting books as a loan receivable in two amounts of $65,810 owed individually by each Dr. Lowry and Dr. Yankov.

■ Dr. Tarbox testified he did not authorize the removal of funds from NNPA's business account to pay off the real estate loan, and he did not approve of the taking of the loan receivable. Dr. Tarbox testified he did not learn of the transaction until 2010.

Dr. Lowry testified that when the real estate loan went into default, he went to the bank with Dr. Yankov and agreed to sign on the loan as a guarantor because he felt bad for getting Dr. Yankov into the bad investment. Dr. Lowry testified he was not aware that Dr. Yankov directed that the $130,000 be removed from NNPA's account to pay off the bank loan, and he was not aware this money had been removed until 2010, at approximately the same time Dr. Tarbox became aware of the transaction. Finally, Dr. Lowry testified he never intended to repay any money to NNPA related to the real estate investment because "[i]t was Dr. Yankov's loan."

Dr. Yankov testified he did not direct Ms. Martinez, NNPA's bookkeeper, to withdraw $130,000 from NNPA's account to pay the real estate note. Dr. Yankov testified he did not have the corporate authority to direct Ms. Martinez to pay anything or withdraw any money—only Dr. Lowry held that authority. Dr. Yankov further testified that in 2010 he learned money was being taken from his salary to pay the loan from NNPA. According to Dr. Yankov, he did not give authorization to make this reduction from his salary. Dr. Yankov testified that, prior to this discovery, when he questioned Dr. Lowry about not receiving the salary amount he expected, Dr. Lowry responded the practice did not make enough money to pay Dr. Yankov's full salary.

Ms. Martinez testified she accompanied Dr. Lowry and Dr. Yankov to Compass Bank to discuss paying off or re-financing the real estate loan. She could not remember the details of the conversation or the result, nor could she remember who di-

rected her to withdraw $130,000 from NNPA's cash account. Ms. Martinez testified she presumed all three doctors were aware of the withdrawal and agreed to handle the real estate loan pay off in that way. Ms. Martinez testified she later discovered from Dr. Lowry that he was not aware of this transaction, although he was aware the bank loan had been paid off after he signed as a guarantor. Ms. Martinez testified deductions were taken monthly from Dr. Yankov's salary to repay the loan; however, no deductions were taken from Dr. Lowry's salary for that purpose. Therefore, Dr. Yankov's loan balance was reduced to $17,474.09. At time of trial, Dr. Lowry had not made any payments on his portion of the loan and still owed $65,810.45. However, the balance sheet at the time of trial reflected the balance of Dr. Yankov's loan as $62,304.70, and the balance of Dr. Lowry's loan was $0.00. Ms. Martinez testified she did not make this accounting entry and did not know that it had been made. Ms. Martinez further testified the balance sheet did not accurately reflect what Dr. Lowry owed NNPA based upon her recollection and knowledge.

Considering the evidence in the light most favorable to the challenged finding, we conclude a reasonable factfinder could have found the evidence sufficient to support the jury's finding that Dr. Lowry breached his fiduciary duty to NNPA with regard to the handling of the personal real estate investment. Appellants have not shown that no evidence supports the jury's finding. Rather, from the evidence presented, the jury could have concluded Dr. Lowry did not make reasonable use of the confidence NNPA placed in him, failed to act in utmost good faith, placed his own interest before that of NNPA, used the advantage of his position to gain a personal benefit at the expense of NNPA, and did not disclose all important information to NNPA or Dr. Tarbox. Therefore, the

jury's finding is supported by more than a scintilla of evidence.

 The testimony and evidence presented by the parties regarding Dr. Lowry's and Dr. Yankov's personal real estate investment was conflicting, and each of the four witnesses who testified on the topic presented a different recollection of how the transaction was handled and who authorized the withdrawal of funds from NNPA to pay off the real estate loan. We defer to the jury's role as factfinder, and we presume the jury resolved all conflicts of credibility in favor of its verdict and that the jury's finding is consistent with its determination of the credibility of the witnesses. See *City of Keller*, 168 S.W.3d at 819-21. The evidence supporting the jury's finding is not so weak as to render the jury's verdict clearly wrong and unjust.

Accordingly, the evidence was factually sufficient to support the jury's finding that Dr. Lowry failed to comply with his fiduciary duty with regard to the personal real estate investment.

*Management Fees*

Appellants assert: "[t]he testimony is uncontroverted that Lowry was indeed managing the practice. The testimony from the majority of interest holders was such and all testified that such fees had been paid for years. Tarbox testified that he originally agreed to the management company arrangement."

Appellants provide no citations or further argument in support of their contention regarding the payment of management fees. See TEX. R. APP. P. 38.1 (requiring an appellate brief to provide the court with a discussion of the facts and the authorities relied upon). Because appellants' briefing on this issue provides no argument or analysis supporting their contention, the brief provides insufficient

basis for us to analyze and determine this issue.

Therefore, we conclude appellants waived their argument that the evidence is insufficient to support the jury's finding that Dr. Lowry failed to comply with his fiduciary duty with regard to the management fees paid to Alamo Healthcare.

Issue seven is overruled.

**Fraud**

■ In issue nine, appellants contend the evidence is legally and factually insufficient to support the jury's finding in Question No. 10 that Dr. Lowry committed fraud against Dr. Tarbox. Question No. 10 asked the jury to determine whether "Robert Lowry, M.D. commit[ted] fraud against Peter A. Tarbox, M.D.?" The jury was then instructed on two theories of fraud: material misrepresentation and failure to disclose a material fact. The jury answered the question, "[y]es."

Although appellants present this issue as a challenge to the legal and factual sufficiency of the evidence, in their brief, appellants argue only that there is no evidence to support the jury's finding on the material-misrepresentation theory of fraud. Appellants did not object to the jury charge submission in broad form; nor do appellants challenge it in broad form on appeal. Therefore, we limit our analysis to the challenge presented—legal sufficiency of the evidence supporting the material misrepresentation fraud theory.

■ A claim for fraud "requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). A promise of future performance constitutes an actionable misrep-

resentation if the promise was made with no intention of performing at the time it was made. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). A party's intent at the time a representation is made may be inferred from the party's subsequent acts. *Id.* "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id.* The mere failure to perform a contract is not evidence of fraud, rather, the proponent must present evidence the defendant made representations with the intent to deceive and with no intention of performing as represented. *Id.* at 435.

Dr. Tarbox testified Dr. Lowry offered him ownership in NNPA, in 2000, for $70,000.00 with the agreement that they would hire other neurologists and grow the practice for retirement. Dr. Lowry and Dr. Tarbox accepted Dr. Yankov as another partner in 2004, and shortly thereafter, Dr. Lowry proposed that Alamo Healthcare assist with sharing overhead and act as a managing agent for NNPA. Both Dr. Tarbox and Dr. Yankov agreed to the arrangement, but no formal written agreement was created.

Dr. Tarbox testified that in 2005, Alamo Healthcare began exerting more management control over NNPA than that to which he originally agreed. Dr. Tarbox voiced his objections to Alamo Healthcare's control with Dr. Lowry in person, letters, and emails. Dr. Tarbox further testified that in 2008, Dr. Lowry hired neurologists for JCMLR, Dr. Lowry's separate, wholly-owned entity, rather than for NNPA as the doctors had previously agreed. When Dr. Tarbox discovered these neurologists were contracted with JCMLR, he confronted Dr. Lowry. According to Dr. Tarbox, Dr. Lowry stated the other neurologists were contracted

with NNPA. Dr. Tarbox testified he and Dr. Yankov were made to believe by Dr. Lowry that the additional neurologists would be contracted with NNPA, as both Dr. Tarbox and Dr. Yankov participated in dinners, interviews, and approved hiring of the additional neurologists. Dr. Tarbox testified that if he had known the neurologists would be contracted under JCMLR, rather than NNPA, he would never have agreed to hire them. According to Dr. Tarbox, this practice devalued his and Dr. Yankov's interest in NNPA and was done solely for Dr. Lowry's self-interest.

Dr. Tarbox testified that Dr. Lowry's giving Alamo Healthcare increased control over NNPA's daily operations, as well as the hiring of neurologists under JMCLR, showed Dr. Lowry never intended to grow NNPA with Dr. Tarbox and Dr. Yankov, but instead intended to increase his own personal control and profit individually. In July of 2009, Dr. Lowry allowed NNPA's corporate charter with the Texas Secretary of State to lapse.

Dr. Tarbox testified that in late 2009, Dr. Lowry promised to hire Dr. Brahin as a neurologist for NNPA. Dr. Lowry specifically stated that Dr. Brahin would be contracted with NNPA to help with Dr. Yankov and Dr. Tarbox's schedules. Based on those representations, Dr. Tarbox agreed to hire Dr. Brahin. According to Dr. Tarbox, Dr. Lowry contracted Dr. Brahin with JCMLR. Dr. Tarbox further testified that in September 2010, Dr. Lowry proposed restructuring NNPA under Alamo Healthcare and requested Dr. Tarbox and Dr. Yankov's approval. According to Dr. Tarbox, Dr. Lowry had already completed the proposed restructure despite lack of approval from the other partners.

Considering the evidence in a light most favorable to the jury's finding, we conclude a reasonable factfinder could have found the evidence sufficient to support a finding that Dr. Lowry made known, false material misrepresentations with the intention that Dr. Tarbox would act upon them; Dr. Tarbox was injured based upon this reliance; and Dr. Lowry had no intention of following through with his promise to grow NNPA as a group practice. The jury's finding that Dr. Lowry committed fraud against Dr. Tarbox under the material misrepresentation theory is supported by more than a scintilla of evidence.

Accordingly, the evidence was legally sufficient to support the jury's answer to Question No. 10 with regard to the theory that Dr. Lowry committed fraud by making a material misrepresentation.

Issue nine is overruled.

**Damages for Fraud**

██ In issue ten, appellants contend the record does not support the jury's finding of damages for fraud. Question No. 11 of the jury charge and the jury's answer appears as follows:

"What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Peter A. Tarbox, M.D. for his damages, if any, that resulted from such fraud:

Consider the following elements of damages, if any, and none other.

. . .

a. Management fees paid by JCMLR, P.A.

**ANSWER:** $0

b. Value of Peter Tarbox, M.D.'s interest in NNPA.

**ANSWER:** $75,076

c. Value of Peter Tarbox, M.D.'s interest in NNPA and JCMLR, P.A. as a single entity less the value received by Peter Tarbox, M.D.

**ANSWER:** $141,410

Appellants begin their argument with the contentions that "Texas law recognizes two measures of direct damages for fraud: the out-of-pocket measure and the benefit-of-the-bargain measure," and "[t]he damage question asks the jury to find 'the amount of Robert Lowry, M.D.'s profit in each of the following transactions.'" Appellants then argue that "Lowry's profit" is not a permissible measure of damages. Then, following this contention, appellants argue: (1) "[a]s to the management fees, there can be no damage for fraud ... because the jury was never shown any evidence determining the value of services rendered by Lowry to earn the management fees, nor how he received less value than was expected;" and (2) "[w]ith regard to the real estate transaction, there was no evidence that there was any harm to NNPA ...."

It appears appellants confuse Question No. 7, which requests a finding of damages on the fiduciary duty cause of action, with Question No. 11, which requests a finding of damages on the fraud cause of action. Question No. 7 states, "What was *the amount of Robert Lowry, M.D.'s profit* in each of the following transactions?" and the forms of damages were presented as "NNPA's funds advanced for *the real estate transaction* at issue" and "*Management fees paid by NNPA.*" Thus, appellants challenge the sufficiency of the evidence to support the jury's assessment of damages in Question No. 11 because it allows a measure of damages not applicable to fraud. Appellants' argument, however, actually tracks the language of Question No. 7, the fiduciary duty damages question.

We note that appellants argued to the trial court in their objection to the jury charge, JNOV motion, and motion for new trial that evidence is legally and factually insufficient to support any damage suf-

fered by Dr. Tarbox individually in any of the three forms of fraud damages presented to the jury. Accordingly, we construe appellants' argument on appeal to be the same argument as that presented to the trial court.

Appellants purport to challenge the legal and factual sufficiency of the evidence to support the jury's finding of fraud damages. However, appellants argue only that there is no evidence to support the jury's finding. For this reason, any intended factual-sufficiency challenge is inadequately briefed and will not be addressed. *See* TEX. R. APP. P. 38.1.

To support an award of damages for fraud, Dr. Tarbox presented testimony from expert witness, William Barnard. Mr. Barnard testified with respect to the valuation of Dr. Tarbox's interest in NNPA when the partnership was formed and the reduction in value to Dr. Tarbox's shareholder interest in NNPA caused by the hiring of neurologists by JCMLR, rather than NNPA. Mr. Barnard also testified regarding the revenue stream that would have benefitted NNPA, rather than JCMLR. Mr. Barnard further testified regarding a hypothetical valuation of an entity comprised of the combined businesses of NNPA and JCMLR, as though Dr. Lowry had not formed JCMLR. Finally, Mr. Barnard testified to the valuation of Dr. Tarbox's shareholder interest in this hypothetical entity. Mr. Barnard did not opine upon the precise amount of damages awarded. Mr. Barnard based his opinion on financial records of NNPA and JCMLR received from Dr. Lowry.

Considering the evidence in a light most favorable to the jury's finding, we conclude a reasonable factfinder could have found the evidence sufficient to support the jury's damage award. Mr. Barnard's testimony and the corresponding evidence constitutes more than a scintilla of evidence

from which the jury could have calculated and determined the damages awarded for fraud committed by Dr. Lowry. Accordingly, the record contains legally sufficient evidence of the damages awarded by the jury in Question No. 11.

Issue ten is overruled.

## Jury Instructions

### *Standard of Review*

 A trial court has wide discretion in submitting jury instructions. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *In re Estate of Johnson*, 340 S.W.3d 769 (Tex. App.—San Antonio 2011). We review a challenge to the trial court's jury charge under an abuse of discretion standard. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion if its acts are arbitrary, unreasonable, or without consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). If the trial court abused its discretion, we will reverse only if the error was harmful. *SW Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 728 (Tex. 2016). A charge error harms an appellant only if it "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case" on appeal. Tex. R. App. P. 44.1(a); *see Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012).

### *Application*

### Business Judgment Rule Instruction

 In issue six, appellants contend the trial court erred by denying their request to include a jury instruction on the business judgment rule in Question No. 6 of the jury charge. Appellants contend the charge was improper and the omission probably caused the rendition of an improper verdict.

Appellants requested that the trial court instruct the jury:

> Shareholders, officers, and directors owe a fiduciary duty to the corporation in their directorial actions, and this duty includes the dedication of their uncorrupted business judgment for the sole benefit of the corporation.

following the question, "Did Robert Lowry, M.D. fail to comply with his fiduciary duty to NNPA?" The trial court refused this specific instruction, and instead, included an instruction stating, "As a majority shareholder, director, or officer of NNPA, Robert Lowry, M.D. owed NNPA a fiduciary duty."

 Corporate officers owe a fiduciary duty to the corporation, which " 'includes the dedication of [their] uncorrupted business judgment for the sole benefit of the corporation.' " *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)). As a fiduciary, a corporate officer owes the corporation "a strict duty of 'good faith and candor,' as well as 'the general duty of *full disclosure* respecting matters affecting the principal's interests'; there is a 'general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal.' " *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied) (quoting *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ) (emphasis in original)). Similarly, "a managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership" and "may not place himself in a position where it benefits him to violate this duty." *Hawthorne*, 917 S.W.2d at 934.

 The business judgment rule generally protects corporate officers and directors, who owe fiduciary duties to the

corporation, from liability for alleged breach of duties based on actions that are negligent, unwise, or imprudent if the actions were "within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved." *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015). Thus, impliedly, the business judgment rule does not apply to protect a corporate officer from liability for acts that are dishonest, fraudulent, or self-dealing. *See id.* Moreover, the business judgment rule does not apply in an action for fraud or breach of fiduciary duty action brought by a shareholder against an officer of a closely-held corporation. *See Webre v. Sneed*, 358 S.W.3d 322, 336-37 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 465 S.W.3d 169 (Tex. 2015).

Without addressing whether the trial court erred by failing to include appellants' requested instruction, we note appellants fail to demonstrate harmful error. Appellants do not show the omission of the requested instruction probably caused the rendition of an improper verdict or prevented them from presenting their case on appeal.

The jury was instructed that "[t]o prove that Robert Lowry, M.D. failed to comply with his duty to NNPA, Peter Tarbox, M.D. must show the transactions in question were not fair or equitable to NNPA;" and Dr. Lowry "did not make reasonable use of the confidence that NNPA placed in him;" "failed to act in the utmost good faith or exercise the most scrupulous honesty toward NNPA;" "placed his own interests before NNPA, used the advantage of his position to gain a benefit for himself at the expense of NNPA, or placed himself in any position where his self-interest might conflict with his obligations as a fiduciary;" and "failed to fully and fairly disclose[ ] all important information to NNPA concerning the transactions." The jury answered "yes" to the ultimate question "[d]id Robert Lowry M.D. fail to comply with his fiduciary duty to NNPA?", thus necessarily finding Dr. Tarbox proved the underlying requisites.

In making these findings, the jury necessarily found Dr. Lowry failed to act within the honest exercise of his business judgment and, additionally, acted neither diligently nor prudently in managing NNPA's affairs. Accordingly, the trial court's exclusion of the requested instruction that Dr. Lowry's fiduciary "duty includes the dedication of [his] uncorrupted business judgment for the sole benefit of the corporation" did not probably cause the rendition of an improper verdict or prevent appellants from properly presenting their case on appeal.

Issue six is overruled.

## Submission of Jury Question No. 16

In issue thirteen, appellants contend the trial court erred by including Question No. 16 in the jury charge because "there is legally no evidence to support" the submission of the question. Appellants argue Question No. 16 "was sought for the purposes of seeking personal liability against the Lowrys for any judgment taken against NNPA because its corporate standing had been forfeited under the Tax Code." Appellants additionally argue section 171.255 of the Texas Tax Code is inapplicable in this case and, therefore, it was error to submit the question to the jury because the debts resulting from Dr. Tarbox's contracts were incurred before the forfeiture of corporate privileges. Question No. 16 asked the jury whether each Robert Lowry, M.D. or Lynnell Lowry, M.D. was an officer or director of NNPA on December 23, 2010.

To preserve error in the jury charge, a party must make the trial court

aware of the complaint, timely and plainly, and obtain a ruling. *Thota*, 366 S.W.3d at 687; *see* TEX. R. CIV. P. 274 (noting a party must distinctly object to preserve error, and "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or default in pleading, is waived unless specifically included in the objections"); *see also* TEX. R. APP. P. 33.1 (stating a party must timely object and make complaining grounds with sufficient specificity, unless specific grounds were apparent from context, and must obtain ruling). Further, the argument made in the trial court must comport with the argument made on appeal. *See Aero Energy Inc.*, 699 S.W.2d at 822.

In their objections to the jury charge appellants stated, with respect to Question No. 16: "The question is not material to any issue in this cause. As such, there in [sic] legally no evidence and factually insufficient evidence for the submission." Although appellants raised the issues of legal and factual sufficiency in their objections to the jury charge, their reasoning was that the question was immaterial to any issue in the underlying action. On appeal, appellants present an entirely different argument, contending it was error to submit the question because the debts from Dr. Tarbox's contracts were incurred before forfeiture of corporate privileges.

Because appellants failed to present the same challenge on appeal as they did in their objections to the jury charge, the alleged error has been waived for appeal.

Issue thirteen is overruled.

## Statutory Cap on Exemplary Damages

In issues twenty-two and twenty-five, appellants contend the trial court erred by failing to apply the statutory cap on exemplary damages awarded for both the fraud and breach of fiduciary duty causes of action. Appellants argue the award of ex-emplary damages in the amount of $523,000 awarded by the jury in Question No. 22 on $249,282 in economic damages for breach of fiduciary duty and exemplary damages in the amount of $937,500 awarded by the jury in Question No. 24 on $216,486 in economic damages for fraud exceeds the statutory damage cap and should be reduced accordingly. In response, Dr. Tarbox contends the facts of this case fall within an exception to the statutory cap on exemplary damages.

Section 41.008 of the Texas Civil Practice and Remedies Code provides that:

Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:

(1)(A) two times the amount of economic damages; plus

(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or

(2) $200,000.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West 2015). The statutory cap does not apply if the defendant intentionally or knowingly engaged in felonious conduct under criminal statutes expressly excluded from the cap under section 41.008(c). *Id.* § 41.008(c) (listing seventeen penal code provisions); *McCullough v. Scarbrough, Medlin & Associates, Inc.*, 435 S.W.3d 871, 912 (Tex. App.—Dallas 2014, pet. denied). In this case, Dr. Tarbox specifically points to the exceptions for misapplication of fiduciary property and theft. *Id.* § 41.008(c)(10), (13).

Dr. Tarbox, however, did not assert these exemptions in the trial court or ask for any determination of their applicability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c); *Signal Peak Enters. of Tex., Inc. v. Bettina Investments*, 138 S.W.3d 915, 927 (Tex. App.—Dallas 2004, pet. stricken) (holding that exemption from

statutory exemplary damage cap requires plaintiff to obtain jury findings on elements of listed criminal offenses and knowing or intentional state). The jury's finding of fraud or malice does not trigger the exception to statutory exemplary damages cap because the definitions of fraud and malice differ from the definitions of intentional or knowing conduct under the Texas Penal Code. *Id.* at 927; *see Mission Res., Inc. v. Garza Energy Trust,* 166 S.W.3d 301, 315 (Tex. App.—Corpus Christi 2005, pet. granted) (holding that exemption from statutory exemplary damage caps requires plaintiff to prove defendant's criminal conduct beyond a reasonable doubt); *see also* TEX. PENAL CODE ANN. § 6.03(a), (b). Without a jury finding that Dr. Lowry intentionally or knowingly violated one of the provisions listed in section 41.008(c), the exceptions to the statutory cap on exemplary damages did not apply.

■ For the breach of fiduciary duty claim, the jury assessed economic damages of $249,282, but did not assess noneconomic damages. Therefore, under section 41.008(b), the exemplary damages cap for the breach of fiduciary duty is two times the economic damages, or $498,564. The jury, however, assessed exemplary damages of $523,000 for the breach of fiduciary duty claim, which exceeded the statutory cap by $24,436.

For the fraud claim, the jury assessed economic damages of $216,486, but did not assess noneconomic damages. As a result, under section 41.008(b), the exemplary damages cap for the fraud claim is two times the economic damages or $432,972. The jury, however, assessed exemplary damages of $937,500, which exceeded the statutory cap by $504,528.

Accordingly, we conclude the trial court erred by failing to apply the statutory cap on exemplary damages. We sustain issues twenty-two and twenty-five, and we reform

the trial court's judgment to cap the exemplary damages award at $498,564 for the breach of fiduciary claim and $432,972 for the fraud claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1).

## Attorney's Fees

■ In issue thirty, appellants contend the trial court erred by awarding Dr. Tarbox attorney's fees because Dr. Tarbox did not segregate the attorney's fees incurred in prosecuting his claims for which attorney's fees are recoverable from the fees incurred in prosecuting claims for which attorney's fees are *not* recoverable. Appellants also argue the affidavits submitted by Dr. Tarbox in support of his request for attorney's fees were not competent evidence and thus insufficient to support his request. Specifically, appellants argue the statements in the affidavits asserting the fees were not separable were conclusory.

It is undisputed Dr. Tarbox asserted claims for which he could recover attorney's fees as well as claims for which he could not recover attorney's fees. In support of his contention the incurred fees were inextricably intertwined and could not be segregated, Dr. Tarbox submitted affidavits from his two attorneys, Donald Kaiser and John Castillo. Kaiser and Castillo attested to and explained the fees incurred from the numerous interrelated causes of action as well as the issues involved in the lengthy litigation. The attorneys attested the legal services related to all causes of action were intertwined and their fees could not be segregated due to the interrelated nature of the causes of action and issues involved. Further, Kaiser attested the legal services rendered would have been necessary even if Dr. Tarbox had not asserted the causes of action for which attorney's fees are unrecoverable.

### Were the Attorneys' Affidavits Competent Evidence?

■ Appellants argue Kaiser's and Castillo's affidavits were not competent evidence because the affidavits contained conclusory statements. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Rodriguez v. Wal–Mart Stores, Inc.*, 52 S.W.3d 814, 823 (Tex. App.—San Antonio 2001), *rev'd on other grounds*, 92 S.W.3d 502 (Tex. 2002).

Kaiser and Castillo both attested the facts and circumstances recited were based upon their personal knowledge. Each affiant provided underlying facts to support his attestation that the fees were not separable. Accordingly, Kaiser's and Castillo's affidavits were competent evidence to support Dr. Tarbox's motion for attorney's fees. *See Tex. Commerce Bank, Nat. Assoc. v. New*, 3 S.W.3d 515, 517-18 (Tex. 1999) (attorney's affidavit was not conclusory where attorney attested he was a duly licensed attorney, familiar with usual and customary attorneys' fees in the area, and based on his personal knowledge of the services rendered, the attorney's fee was reasonable); *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 884 (Tex. App.—El Paso 2014, no pet.) (attorney's affidavit was not conclusory where attorney attested his fees were reasonable, necessary, usual, and customary fees for the type of services involved in the instant case).

### Segregation of Attorney's Fees

■ Although attorney's fees generally must be segregated, segregation is not required when the claims arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Buchanan v. O'Donnell*, 340 S.W.3d 805, 815-16 (Tex. App.—San Antonio 2011, no pet.); *see also Tony Gullo Motors I,*

*L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (noting attorney's fees need not be segregated when discrete legal services are intertwined by advancing both a recoverable and unrecoverable claim).

Both Kaiser and Castillo attested the legal services rendered advanced both recoverable and unrecoverable causes of action and that the causes of action were inextricably intertwined. The attorneys' affidavits support the trial court's conclusion that the attorneys' fees need not be segregated. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d 299 at 313-14; *Buchanan*, 340 S.W.3d at 815-16. Therefore, the trial court did not err by determining the legal services were so intertwined that segregation was not required.

Issue thirty is overruled.

### Inadequately Briefed Issues

■ An appellate brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Although we must construe briefing requirements liberally and reasonably, parties asserting error on appeal must put forth some specific argument and analysis showing the record and the law support their contentions. *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 783-84 (Tex. App.—Dallas 2013, no pet.); *San Saba Energy, EP. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). To comply with Rule 38.1, appellants must provide such a discussion of the facts and the authorities relied upon to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp.*, 106 S.W.3d at 128.

When appellants fail to discuss the evidence supporting their claim or apply the law to the facts, they present nothing for review. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895-96 (Tex. App.—Dallas 2010, no pet.). Thus, failure to offer argument, provide appropriate record citations, or a substantive analysis waives an appellate issue. *Lance v. Robinson*, 04-14-00758-CV, 2016 WL 147236, at *11-12 (Tex. App.—San Antonio Jan. 13, 2016, pet. filed); *Bolling*, 315 S.W.3d at 896-96.

Appellants' brief does not provide any discussion of the evidence or law to support the general claims addressed below. The brief contains only conclusory statements, unsupported by legal citations or application of authority to the facts of this case. Because appellants' brief contains only general statements of appellants' position on the issues addressed below, it does not present sufficient argument nor provide basis to support a conclusion the trial court erred in any way in relation to the following issues. *See Gonzalez*, 418 S.W.3d at 783–84; *Tesoro Petroleum Corp.*, 106 S.W.3d at 128; Tex. R. App. P. 38.1.

### Sufficiency Challenges

In the following issues, appellants challenge the sufficiency of the evidence supporting the jury's findings: two, five, eight, eleven, twelve, fifteen, sixteen, eighteen, twenty-one, twenty-four, twenty-eight, and twenty-nine. Because appellants failed to provide arguments or analysis applying legal authority to the facts of this case in relation to these issues, we conclude appellants waived these issues based upon their failure to comply with Rule 38.1.

Issues two, five, eight, eleven, twelve, fifteen, sixteen, eighteen, twenty-one, twenty-four, twenty-eight, and twenty-nine are overruled.

### Evidentiary Issues

In issue twenty-six and twenty-seven, appellants contend the trial court erred by improperly ruling on evidentiary issues. Appellants present only conclusory statements with no analysis or application of law to the facts of this case in support of their contentions. Therefore, we conclude appellants waived these issues based upon their failure to comply with Rule 38.1.

Issues twenty-six and twenty-seven are overruled.

### Submission of Jury Questions

In issues fourteen, seventeen, nineteen, twenty, and twenty-three, appellants contend the trial court erred by including several questions in the jury charge. Because appellants' briefing on these issues provides no argument or analysis supporting their contention or applying legal authority to the facts of this case, appellants' brief provides insufficient basis for us to analyze and determine these issues. Accordingly, we conclude appellants waived these issues based upon their failure to comply with Rule 38.1.

Issues fourteen, seventeen, nineteen, twenty, and twenty-three are overruled.

### CONCLUSION

For the foregoing reasons, we reform the trial court's judgment to cap the exemplary damage award at $498,564 for the breach of fiduciary claim and $432,972 for the fraud claim. We affirm the trial court's judgment as reformed.