# IN THE SUPREME COURT OF TEXAS

No. 19-0343

LION COPOLYMER HOLDINGS, LLC, PETITIONER,

v.

LION POLYMERS, LLC, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

**PER CURIAM**

JUSTICE GUZMAN did not participate in the decision.

In this appeal, Petitioner complains that the court of appeals erred in sustaining the admission of certain deposition testimony that prejudiced its case and in concluding that its briefing was inadequate to raise an issue about the record's factual sufficiency. While we agree that the trial court did not abuse its discretion in admitting the deposition testimony at issue, we do not agree that Petitioner's briefing in the court of appeals failed to preserve its complaint about the factual sufficiency of the evidence. Although the court of appeals held that Petitioner waived its factual sufficiency complaint through bare assertions unsupported by argument, ___ S.W.3d ___, ___ (Tex. App.—Houston [1st Dist.] 2019), we conclude that the issue was adequately briefed and argued and should have been considered. We accordingly reverse the judgment below and remand the Petitioner's factual sufficiency complaint to the court of appeals for its consideration.

Petitioner, Lion Copolymer Holdings, LLC (Company), is a synthetic rubber and rubber chemical manufacturer in Louisiana. Company entered into an Amended and Restated Limited Liability Agreement (LLC Agreement) with Respondent Lion Polymers, LLC (LP), one of Company's members. The LLC Agreement sets forth the terms of Company's formation and its management structure. The Agreement creates membership interests, which it identifies as "units." When it was admitted as a member, LP received two classes of units: Class 1 Preferred Units and Class 3 Common Units. This membership arrangement creates a waterfall structure whereby taxes pass through Company and are paid by its members, including LP.

Under the Agreement, members share in Company's profits and losses. Company's Board of Managers determines whether and when Company distributes profits and losses to its members. Before profit distributions are made, however, a member may incur tax liability proportionate to its membership interest. To account for this asymmetry, the Agreement commits to advancing members cash sufficient to satisfy their estimated tax liability. Specifically, under section 6.01(d)

> On each Tax Distribution Date, the Company shall, to the extent the Board determines such amounts to be available for distribution, make distributions to the Members in such amounts as the Board determines are sufficient to satisfy the Members' projected estimated income tax liability with respect to the Company's income allocable to their Units for such period, including any reallocation of amounts of income to a Member which may occur due to the allocations provided in Section 6.05(a) . . . . Any distribution made to a Member pursuant to this Section 6.01(d) shall be treated as an advanced distribution of, and shall reduce, the amounts next distributable to such Member pursuant to Section 6.01 or 6.02.

This tax advance prevents members from paying out of pocket for tax liabilities. If Company provides members with a tax advance, the Agreement allows Company to recoup that amount by reducing a later, non-tax distribution by the amount advanced. The underlying suit addresses whether Company improperly deducted a tax advance twice from member distributions.

2

LP first filed a breach of contract claim against Company in February 2014, asserting that Company improperly withheld certain sums in recapitalization distributions. LP amended its petition in October 2015 to include a double-deduction claim, asserting that Company had inappropriately deducted twice a tax advance for the third and fourth quarters of 2011. According to LP, Company improperly reached into the future to deduct $361,295 in tax advances as part of a 2011 distribution, as shown in a February 2012 spreadsheet. LP asserts that as part of a 2013 distribution, Company again deducted the same 2011 third and fourth quarter tax distribution. Company does not dispute that the February 2012 spreadsheet was inaccurate but rather contends that it did not properly represent prior tax withholdings. According to Company, after LP alerted it to inaccuracies contained in the February 2012 spreadsheet, it and LP continued communicating and exchanged new calculations, represented by new spreadsheets. This dialogue culminated in an August 2012 spreadsheet, which represented the proper calculations and removed the inaccuracies contained in the February 2012 spreadsheet. Company contends it then distributed capital consistent with the August spreadsheet. LP contends that the February 2012 spreadsheet and ultimate 2013 distribution reveal that Company double deducted the 2011 third and fourth quarter tax advance. The trial court agreed with LP and a jury awarded LP actual damages totaling $361,295, the amount corresponding to the February 2012 spreadsheet.

The court of appeals affirmed. ___ S.W.3d at ___. In its appeal, Company argued that the evidence was legally and factually insufficient to support the jury's verdict and that the trial court abused its discretion in admitting the deposition testimony of Richard Furlin, the Company accountant that prepared the February 2012 spreadsheet. *Id.* at ___, ___. After holding the evidence legally sufficient to support the trial court's judgment, the court declined to consider Company's

factual sufficiency complaint because the "issue has been inadequately briefed and that error . . . waived." *Id.* at ___ (citing *Lowry v. Tarbox*, 537 S.W.3d 599, 614 (Tex. App.—San Antonio 2017, pet. denied); *City of Houston v. Levingston*, 221 S.W.3d 204, 217 n.9 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). Notwithstanding its holding, the court of appeals noted that Company challenged factual sufficiency by three "bare assertions":

- "Alternatively, for these same reasons, the evidence is so weak that it is factually insufficient to support a finding that the Company owed [LP] any money; reversal and a new trial are therefore warranted."
- "Alternatively, the evidence of a double deduction and the amount owed is so weak that it is factually insufficient; reversal and a new trial are therefore warranted."
- "Alternatively, the evidence supporting the jury's findings is so weak and so contrary to the overwhelming weight of all the evidence that the jury's verdict should be set aside and a new trial ordered because it is factually insufficient."

*Id.*

The court of appeals also held that the admission of the deposition testimony was not an abuse of discretion because "the probative value of the complained-of portions of Furlin's deposition testimony was not substantially outweighed by the danger of unfair prejudice or a tendency to confuse or mislead the jury." *Id.* at ___ (citing TEX. R. EVID. 403). Company appealed both issues.

Our briefing rules instruct that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P 38.1(i). However, briefs must also "be liberally, but reasonably, construed so that the right to appeal is not lost by waiver." *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam) (citing TEX. R. APP. P. 38.9; *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam)). Indeed, courts should hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020)

4

(per curiam). To determine whether an issue was waived, a court looks not only to the wording of the issue but the argument under each heading to assess the intent of the parties. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). While it is preferred that parties independently brief distinct legal theories, *see La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 568 (Tex. 1984), certain claims and theories can be "inextricably entwined," *St. John Missionary Baptist Church*, 595 S.W.3d at 216, or the evidence and nature of claims may contain overlapping legal theories, *see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 631, 633 (Tex. 1986). Thus, it is essential for courts to look not simply at the wording of parties' issues, but also the arguments, evidence, and citations relied on by those parties to determine which issues the parties intended to and actually briefed. *See St. John Missionary Baptist Church*, 595 S.W.3d at 214; *Pool*, 715 S.W.2d at 633.

Company adequately briefed its factual sufficiency complaint in the court of appeals. One of Company's issues in the court of appeals was whether "evidence was legally or factually sufficient to support" a finding that Company owed $361,295 to LP. Company argued that the only basis for the jury's verdict came from LP's suggestion that the February 2012 spreadsheet reflected that the same tax advance had been previously deducted in 2011. Company then listed the evidence that LP relied on to support its claim that Company used the February 2012 spreadsheet to make its calculations: Furlin's deposition testimony about the February 2012 spreadsheet, the February 2012 spreadsheet itself and an accompanying email, and Furlin's testimony regarding prior tax advances made to LP by September 2011. Although Company asserted that these pieces of evidence constituted "no more than a scintilla of evidence"—the standard for legal insufficiency, *see Formosa Plastics Corp. USA v. Presidio Eng'rs Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.

5

1998)—Company subsequently weighed each of these pieces of evidence against countervailing evidence. It identified evidence (1) that Furlin, as well as other witnesses, disputed whether the February 2012 spreadsheet was used for the distribution and that an LP executive admitted on cross examination that later-dated calculations existed, (2) that later correspondences revealed the parties may have exchanged communications and accountings after the February 2012 spreadsheet that allegedly resulted in a different "final" readjustment, and (3) that suggested the 2013 distribution was consistent with the August 2012 spreadsheet rather than the February 2012. This comparative analysis is a quintessential factual insufficiency challenge.

A party attacking the factual sufficiency of a finding on appeal must "demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). This is what Company did, even though it intertwined its analysis with a legal sufficiency complaint. Company identified the damages award, $361,295; evidence that would support that award; and countervailing evidence to argue that "the evidence is so weak that it is factually insufficient to support a finding that the Company owed [LP] any money." We therefore conclude that the court of appeals erred in holding that Company waived its factual sufficiency complaint by inadequately briefing the issue.

Company also argues that the court of appeals erred in sustaining the trial court's admission of the following portion of Furlin's deposition testimony. ___ S.W.3d at ___.

Q: *... I'm going to hand you [the February 2012 Spreadsheet]. Do you know what this is?*

Furlin: *Yes.*

Q: *What is it?*

6

Furlin: *I can't validate this is the final because I don't—you know, if this matches exactly what was the final distribution, but this is the calculation of the September 2011 distribution following the waterfall as it was intended and comparing it to what we actually did in 2011.*

Q:.... You can see the file name at the bottom .... *And then the file name I believe is Lion 2011 Distribution Final Reallocation February 2012.XLXS. Is that—is this the final spreadsheet you did?*

Furlin: *I would say it probably is because that's how I would have named it.*

Q: *Would there have been one you did after February of 2012?*

Furlin: *I don't recall. Of course, sometimes final is final version 1, version ...*

Q: *I totally understand. I've been looking at this as if it was the final, but I want to make sure it is the final. <u>This is the—I'll represent to you that in the spreadsheets that have been produced to us, this is the final dated spreadsheet we have</u>.*

Furlin: *Then okay.*

Q: But again, I want to make sure this is the final because I want to make sure I have your numbers that form the basis of everything you've done here.

Furlin: Okay.

Q: *So if this is the final, this should tie to what was actually distributed to all of the unit holders, right?*

Furlin: *No.*

Q: Why not.

Furlin: There were two parts. One was the 2010 recalculation and the 2011 recalculation. It was the sum of those. It's a zero sum gain [sic]. So some people were overpaid, some people were underpaid. We did 2010 and 2011 and summed up the amounts and said okay. But the sum, who was overpaid, who was underpaid.

Q: Fair enough. So for [LP's] Class 3 units, because they only received a distribution in the 2011 distribution, this would show the amount that they received in the 2011 distribution only, right?

Furlin: This would show what they were—should have received and compared to what they did receive.

Q: *Right. This is the ultimate amount. I know there was some after-the-fact changes that were made to make sure the ultimate cash flow movements were correct. But this is the ultimate amount of their distribution. Is that fair to say?*

Furlin: *Yes.*

....

Q: At the time the 2011 distribution was calculated, 1.964 million was deducted from [LP] as [an] applied article 6.01(d) distribution, right?

Furlin: Correct.

Q: In reality, less than that had actually been distributed under 6.01(d) as tax advances to [LP], right?

Furlin: Right, but you can't look at one side of it....

Q: But the answer to my question is yes, right?

Furlin: The answer is yes, but you're—yes.

....

Q: *And you did withhold the 1 million 964?*

Furlin: *That's correct.*

(Emphasis added.)

Company contends that the trial court abused its discretion in admitting the italicized portions of the deposition testimony and the error likely caused the rendition of an improper judgment. According to Company, LP's counsel misrepresented to Furlin during his deposition that the February 2012 spreadsheet was the final dated spreadsheet it had, despite contrary evidence. This, Company concludes, allowed LP to procure Furlin's testimony by misrepresentation and should therefore be excluded because Furlin's testimony confused and misled the jury. *See* TEX. R. EVID. 402, 403.

"Relevant evidence is admissible unless" "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* 402, 403. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* 401. Furlin's testimony is inherently relevant. As the court of appeals noted, Furlin's testimony would tend to make a fact of consequence— whether Company deducted $361,295 in multiple distributions—more or less probable. ___ S.W.3d at ___; *see* TEX. R. EVID. 401, 402. And, even as Company implies in its briefing, Furlin's testimony has probative value because LP used it as evidence that the third and fourth quarter 2011 tax advances may have been double deducted based on the February 2012 spreadsheet. TEX. R. EVID. 403. Company contends that the statement has no probative value because any reliance

9

during trial came from a misrepresentation that it was the final dated spreadsheet Company had. However, Company snips the alleged misrepresentation from its context. Rather, it is reasonable to conclude that LP was not attempting to procure a statement by misrepresentation but instead to determine whether the February 2012 spreadsheet was the last spreadsheet that Furlin compiled, given that he was the accountant generally in charge of calculating these distributions.[1] Although this likely worked against Company, such adversarial evidence is expected at trial. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam) ("[T]estimony is not inadmissible on the sole ground that it is 'prejudicial' because in our adversarial system, much of a proponent's evidence is legitimately intended to wound the opponent."). Furlin's deposition testimony addresses the heart of the dispute—whether this was the final spreadsheet he compiled, which shows the tax as previously deducted—thus it did not have a tendency to confuse or mislead the jury because it addressed the exact wrong LP complained of. TEX. R. EVID. 403. Nor is this unfairly prejudicial because his testimony would encourage a decision on a relevant circumstance rather than an improper basis or irrelevant appeal. *See Diamond Offshore Servs. Ltd v. Williams*, 542 S.W.3d 539, 549 n.37 (Tex. 2018) (collecting cases). Thus, the trial court did not abuse its discretion when it admitted Furlin's deposition testimony.

---

[1] Q:.... You can see the file name at the bottom .... And then the file name I believe is Lion 2011 Distribution Final Reallocation February 2012.XLXS. *Is that—is this the final spreadsheet you did?*
Furlin: I would say *it probably is* because *that's how I would have named it.*
Q: *Would there have been one you did after February of 2012?*
Furlin: *I don't recall.* Of course, sometimes final is final version 1, version ...
Q: I totally understand. I've been looking at this as if it was the final, but I want to make sure it is the final. This is the—I'll represent to you that in the spreadsheets that have been produced to us, this is the final dated spreadsheet we have.
(Emphasis added)

Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant Company's petition for review, reverse the court of appeals' judgment, and remand the case for the appellate court to consider Company's factual sufficiency complaint and its effect, if any, on its judgment.

**OPINION DELIVERED:** December 18, 2020